**J.S. & M.S., individually and J.S., a minor by his mother and Legal Guardian, M.S., Plaintiffs,**

v.

**RAMAPO CENTRAL SCHOOL DISTRICT, Defendant.**

**No. 01 CIV. 0238(CM).**

United States District Court, S.D. New York.

Sept. 21, 2001.

Michael A. DiChiaro, Chestnut Ridge, NY, for Plaintiffs.

Carl L. Wanderman, Greenberg, Wanderman & Fromson, Montebello, NY, for Defendant.

MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiffs J.S. ("Jeffrey") and M.S. ("Mrs. S.") sue defendant Ramapo Central

School District ("the District") for consultant fees and other related expenses as prevailing parties under the Individuals with Disabilities Education Act § 601 *et. seq.,* as amended, 20 U.S.C.A. § 1400 *et. seq.*

Plaintiffs and defendant cross-move for summary judgment.

## FACTUAL BACKGROUND

Jeffrey is an eighteen year old with a learning disability. His learning disability became apparent as early as the second grade, when he was classified by the District as a child with special academic needs.

Jeffrey's ninth grade individualized education program ("IEP") revealed a fifth grade reading ability, severe language deficits and comprehensive problems. Mrs. S sought services from the District to address her son's needs. The District maintained that Jeffrey did not qualify for remedial reading because his ability was not low enough—and that he could and would meet the standards of a New York State Regent's Diploma.

The District issued another IEP in 1998 ("1998 IEP"). The 1998 IEP attempted to address Jeffrey's academic needs by placing him in a resource room for 180 minutes weekly, and providing him speech and languages services two times per week for 30 minute periods in both individual and small group instruction. According to plaintiffs, the 1998 IEP was insufficient. As a result, Mrs. S. hired a psychotherapist, Dr. Starishevsky, and a tutor, Lynn Giacomarra, to help her son.

Jeffrey's report card for the 1998–99 academic year (his tenth grade) reflected that Jeffrey had failed every subject during the fourth quarter, and a failing final yearly grade average in all subjects except "resource room." In a May 12, 1999 annual review, the District conducted a speech and language evaluation, an educational evaluation, a classroom observation evaluation, and a psychological evaluation.

In June 1999, the District's Committee on Special Education ("CSE") met and considered Jeffrey's educational needs relating to his need to repeat the tenth grade. CSE developed an IEP dated June 22, 1999 (the "1999 IEP") that recommended that Jeffrey's interests might be best served by his attending a special education program in Rockland County. However, according to plaintiffs, the CSE informed Mrs. S that it was unclear whether alternative programs in Rockland County could accommodate Jeffrey. Despite a promise to make the arrangements to enable Mrs. S to look at the programs that might be available, the District never got back to her until long after the decision had to be made as to where Jeffrey would attend school in the 1999–2000 school year.

Mrs. S then hired a special education consultant, Marilyn Arons. Arons reviewed Jeffrey's academic history, his educational test results, and the evaluations of his performance and learning disabilities. Arons also met with Jeffrey to evaluate his academic challenges, and to develop an appropriate plan to reverse his failing performance.

Arons proposed to Lee Kapleau, chairperson of the District's CSE, that Jeffrey be placed at The Pine Ridge School in Vermont ("Pine Ridge"), which was on the emergency approved placement list for New York State schools. Kapleau told Arons that if Mrs. S planned to dispute the recommended 1999 IEP, then she was free to request a due process hearing.

Mrs. S enrolled Jeffrey at Pine Ridge for the 1999–2000 school year.

On October 5, 1999, Mrs. S requested a due process hearing, seeking, *inter alia,*

reimbursement for all costs associated with Jeffrey's attendance at Pine Ridge. Pursuant to that demand, the District appointed Kenneth Stewart, an Impartial Hearing Officer, from the rotational list of Hearing Officers maintained by the New York State Education Department.

The due process hearing was held on January 24, 2000, February 24, 2000, and February 28, 2000, during which Lee Kapleau testified as the only witness. At all times during the hearings, Ms. Arons served as the spokesperson and advocate for the plaintiffs.

After the hearings, the District agreed that the District's CSE would reconsider its recommendation for Jeffrey's placement; if it determined that Jeffrey required a residential placement, the District would attempt to place Jeffrey in a New York State approved school. If no such placement was available, the parties agreed that an application would be made by the District to the State Education Department for emergency approval of Pine Ridge as a placement for Jeffrey, effective, retroactively, to the beginning of the 1999–2000 school year.

On March 13, 2000, the CSE met, and with Jeffrey and Mrs. S present, recommended that Jeffrey be placed in a residential school. The State Education Department approved Pine Ridge as an emergency residential placement on March 24, 2000.

On May 15, 2000, Arons wrote to the Impartial Hearing Officer, advising him that the case had been settled, that the parent had agreed to drop her compensatory claim, that the matter had been "satisfactorily resolved," and that his services as a Hearing Officer were no longer needed. The defendant paid the full tuition, room and board for Jeffrey at Pine Ridge for the 1999–2000 school year. Pine Ridge reimbursed plaintiffs for payments that Mrs. S had made to Pine Ridge prior to payment by the District for the entire school year.

Plaintiffs now seek reimbursement for "consultant services" provided by Arons, psychotherapy provided by Dr. Starisevsky, tutoring provided by Lynn Giacomarra, and other expenses. They move for summary judgment on the ground that as prevailing parties under IDEA, the District is obligated to reimburse plaintiffs for their fees incurred in challenging Jeffrey's IEP.

Defendants cross-move for summary judgment, alleging that "consultants' fees" are not included under the IDEA; that plaintiff failed to exhaust her administrative remedies; and that the claims are time-barred. Even if the plaintiff were to overcome those procedural hurdles, defendant argues that under the U.S. Supreme Court's recent decision in *Buckhannon v. West Virginia*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), prevailing party fees are not available for a party that has failed to secure a judgment on the merits.

For the reasons stated below, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-movant. *See Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. In making its determination, the court must resolve

all ambiguities and draw all reasonable inferences in favor of the non-movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When opposing a motion for summary judgment, it is not sufficient for the non-moving party to present evidence that is conclusory or speculative, with no basis in fact. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. While Plaintiffs need not produce direct evidence of an alleged civil rights violation, they must be able to produce evidence, in admissible form, that is more than surmise and speculation which is based on their own subjective beliefs. *See Matsushita,* 475 U.S. at 576, 106 S.Ct. 1348.

Plaintiffs seek recovery under the IDEA for reimbursement of "consultants fees" paid to Ms. Arons. The IDEA is one of a number of statutes that provide a court's authority to award reimbursement of attorney's fees to a prevailing party. It states: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." IDEA, 20 U.S.C. § 1415(i)(3)(B). The parties dispute whether plaintiffs meet the definition of a prevailing party.

This year, the Untied States Supreme Court set forth the standard of who may be considered a "prevailing party" in a civil rights lawsuit. *See Buckhannon v. West Virginia Dep't of Health,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). The issue in *Buckhannon* was whether the term "prevailing party" includes a party

that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. *Id.* at ——, 121 S.Ct. 1835. The Court evaluated a claim for attorney's fees under the Fair Housing Amendments Act of 1988, 102 Stat. § 1619, 42 U.S.C. § 3601 *et. seq.* and the Americans with Disabilities Act of 1990(ADA), 104 Stat. § 327, 42 U.S.C. § 12101, *et. seq.*—statutes which, like the IDEA, allow a court to grant, in its discretion, a reasonable attorney's fee to a prevailing party. *Id.* at 1839.

The Court denied the request for fees, reasoning that a "prevailing party" is one who has been awarded some relief by a court. *Id.* at 1838 (citing *Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)). Both judgments on the merits and court-ordered consent decrees create a material alteration of the parties' legal relationship and thus permit an award. *Id.* at 1840. However, the Court rejected the "catalyst theory," which would allow an award where there is no judicially sanctioned change in the parties' legal relationship. *Id.* It stated that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.*

■ There is nothing in *Buckhannon* to suggest—and plaintiffs do not argue—that the opinion is limited to ADA and FHAA cases. The Court refers to similar fee-shifting statutes in general throughout the opinion. *See id.* (citing the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. § 2000e–5(k), the Voting Rights Act Amendments of 1975, 89 Stat. 402, 42 U.S.C. § 19731(e), and the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988). *See also Jose*

*v. Joliet Township H.S. Dist.*, 204, No. Civ. A. 01–4798, 2001 WL 1000734 (N.D.Ill. Aug.29, 2001) (concluding that *Buckhannon's* "prevailing party" rules apply to the IDEA, and other fee-shifting statutes). The fee-shifting rules of *Buckhannon* apply with as much force to the IDEA as it does to any of the other civil rights statutes cited in the opinion.

■ Plaintiffs' first argument is that, even under *Buckhannon*, they can succeed on their claim because there was an alteration of the legal relationship between the parties. They base the argument on the fact that (1) the District reconvened a CSE to issue another IEP classifying Jeffrey as disabled and recommending his placement at Pine Ridge; (2) the administrative hearing was adjourned when the CSE issued its revised finding, and that the District never formalized and wound up the hearing that was started (despite Ms. Arons' alleged oral and written requests); and (3) under the statutory scheme of the IDEA, Mrs. S and Jeffrey could not have sought or received their fees and costs from the administrative hearing officer—only by commencing an action before this Court. They request that this court declare plaintiffs to be prevailing parties because they secured precisely the relief they sought.

Defendant argues that plaintiffs are not prevailing parties because the parties entered into a private settlement of the matters involved in the hearing before Mr. Stewart with the expectation that it was in full settlement of plaintiff's claims. Defendant is correct.

By letter of May 15, 2000, Ms. Arons wrote to Hearing Officer Stewart:

> In reviewing the file of the [Jeffrey S.] case, I find that there is no formal closing of the record. Therefore, let this letter serve to formalize the settlement reached in this case.

Following the last day of hearing [sic], the parties met at a CSE meeting. At that time an IEP was developed for placement at the Pine Ridge School retroactive to September 1999. The parent agreed to drop her compensatory claim in exchange for prevailing on the prospective relief sought. As a result, the hearing was not reconvened. (Def's Notice of Motion for Summ. J. at Ex. G.).

The Hearing Officer Stewart wrote to Carl Wanderman, attorney for the District, in a letter dated May 30, 2000, stating, in pertinent part:

> I have just been notified by the Parent Information Center that the above captioned matter [Jeffrey S.] has been satisfactorily resolved and therefore my services will not be needed further.
>
> I am enclosing herewith a statement of my Impartial Hearing Officer services. Kindly forward it to the appropriate School District office.

(Id. at Ex. H.).

No "Order" or "Decision" was sought from the Impartial Hearing Officer. The plaintiffs elected not to pursue a remedy before him because hey achieved the result they sought—namely, securing a placement for Jeffrey at Pine Ridge, and reimbursement for its tuition. Accordingly, no decree, judgment or decision was issued by the Hearing Officer or any judicial entity.

Private settlement agreements do not confer prevailing party status. *See Buckhannon*, 121 S.Ct. at 1840 n. 7. They do not entail the judicial approval and oversight involved in consent decrees, and federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into an order of dismissal. *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S.Ct.

1673, 128 L.Ed.2d 391 (1994)). *See also Jose R. v. Joliet Township H.S. Dist. 204,* No. Civ. A. 01–4798, 2001 WL 1000734 (N.D.Ill. Aug. 29, 2001).

In *Jose,* plaintiffs requested a due process hearing seeking to have Joliet Township provide Jose with specialized instruction under the IDEA. After a mediation agreement was reached, the agreement was read into the record before a hearing officer. *Id.* at *1. As a result of the agreement, Jose received the educational services he was previously denied. Defendant argued that the mediation agreement was a private settlement because an administrative hearing was never held, evidence was never presented, and there was no finding or order by the hearing officer. The Court distinguished "consent decrees," in which there is a court-ordered change in the legal relationship between the parties, from "private settlement agreements," which require no such judicial approval. *Id.* It held that plaintiffs were prevailing parties, basing its decision on the fact that the parties' agreement was read into the record before a hearing officer. *Id.* at *2.

In the case at bar, there was an administrative hearing over three days, in which some evidence was presented. However, before the proceeding concluded, the District agreed to their demands, and the case was settled. Unlike *Jose,* the agreement was never read into the record in front of the hearing officer. The hearing officer in this case was not asked to render an opinion or affirm a settlement because his services were no longer needed. The parties entered into a private settlement agreement—and plaintiffs therefore are not entitled to "prevailing party" status.

As a fall-back position, plaintiffs argue that this Court should not apply the strict requirements of *Buckhannon* retroactively, because that case was handed down after this lawsuit was filed. To support this claim, plaintiffs reassert their previous arguments that they had secured the relief they sought, that the District had an enforceable legal obligation from the settlement, and that it would be equitable to award them fees.

 In determining whether to apply a rule retroactively, the U.S. Supreme Court generally has considered three separate factors. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). First, if a decision is not to be applied retroactively, it must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, *see id.* (citing *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 496, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968)), or by deciding an issue of first impression whose resolution was not clearly foreshadowed, *see id.* (citing *Allen v. State Board of Elections,* 393 U.S. 544, 572, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969)). Second, a court must "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Id.* (citing *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)). Finally, where a decision of a court could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of nonretroactivity. *Id.*

 None of these factors are present in the case at bar. The *Buckhannon* Court did not overrule clear past precedent. Indeed, the majority opinion reviewed its past decisions, and concluded that it was not establishing a new principle of law. It stated: "These decisions, taken together, establish that enforceable judgments on the merits and court-ordered

consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon*, 121 S.Ct. at 1840 (citation omitted). This Court see no reason—and the plaintiffs have not asserted one—why application of the Buckhannon rule would retard the operation of the fee-shifting rule, or produce substantially inequitable results. Accordingly, this Court must apply *Buckhannon* to the case at bar.

## CONCLUSION

Because plaintiffs are not entitled to recovery as a "prevailing party," this Court need not address defendant's alternate arguments. For the foregoing reasons, defendant's motion for summary judgment is granted, and the Clerk is directed to close the case.

This constitutes the decision and order of this Court.