D.M. by his parents and natural guardians, G.M. and C.M. and G.M. and C.M., Individually, Plaintiffs,

v.

BOARD OF EDUCATION, CENTER MORICHES UNION FREE SCHOOL DISTRICT, Defendant.

No. CV 03–0826.

United States District Court, E.D. New York.

Dec. 17, 2003.

Wasserman Steen LLP, By: Lewis M. Wasserman, Esq., Patchogue, NY, for Plaintiffs.

Dranitzke, Lechtrecker, Trabold & Johnson, Esqs., By: Harold G. Trabold, Esq., Patchogue, NY, for Defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action for an award of attorneys fees pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1415 (the "IDEA"), the Rehabilitation Act, 29 U.S.C. § 794 and 42 U.S.C. § 1988. Plaintiffs seek fees pursuant to the functionally equivalent provisions in these statutes that authorize an award of attorneys fees to prevailing parties. *See* 20 U.S.C. § 1415(i)(3)(B) (IDEA provision authorizing an award of fees to "the parents of a child with a disability who is the prevailing party" in connection with any action or proceeding brought pursuant to the IDEA); 29 U.S.C. § 794 (fee provision of Rehabilitation Act); 42 U.S.C. § 1988 (fee provision of the Civil Rights Act). Defendant argues that an award of fees in this case is not appropriate on the ground that Plaintiffs are not prevailing parties.

Presently before the court are the parties' cross-motions for summary judgment. For the reasons set forth below, the court holds that Plaintiffs are, indeed, prevailing parties within the meaning of the relevant statutes. Accordingly, the court grants Plaintiffs' motion and denies that of Defendant.

## BACKGROUND

### I. *Factual Background*

The facts as set forth below are those in parties' submissions that are not in dispute. Plaintiffs G.M. and C.M. ("Plaintiffs") are the parents of D.M., a child who attends school within the Center Moriches Union Free School District. Defendant is the Center Moriches Board of Education (the "District").

### A. *The 2001–2002 IEP and the Request for an Impartial Hearing*

D.M. was born on May 5, 1995 and has been classified by the District as an emotionally disturbed child, a disabling condition within the meaning of the IDEA. On December 7, 2001, the District convened a meeting of the Committee on Special Edu-

cation (the "CSE") for the purpose of developing an Individualized Education Plan ("IEP") for D.M. for the 2001–02 school year. An IEP was developed and on December 26, 2001, Plaintiffs sent a letter to the District objecting to the plan and requesting a hearing before an Impartial Hearing Officer ("IHO").

Plaintiffs' letter was followed up by a letter of counsel dated February 27, 2002. That letter also requested a hearing before an IHO and set forth numerous and particular deficiencies in the IEP. Among the deficiencies set forth in counsel's letter were the improper classification of D.M., the failure to properly assess D.M.'s level of functioning in several areas, the absence of specific goals and the failure to indicate the supplementary aids and services, testing accommodations and assistive technology devices to be provided. Among the relief sought was a new meeting of the CSE to develop an appropriate IEP, an order directing the provision of speech and language services and extensive counseling for D.M.

### B. *The Impartial Hearing*

Pursuant to the requests for an impartial hearing, the District appointed an IHO to preside in this matter. The hearing began on March 11, 2002 and was attended by Plaintiffs and their counsel. Plaintiffs and counsel also attended hearings held on June 13, 2002, June 24, 2002 and on July 8, 2002. The latter two hearing dates also considered alleged defects in a proposed IEP drafted by the District for the 2002–2003 school year. The defects set forth with respect to this latter IEP included the allegation that the placement of D.M. in a segregated special education class at a BOCES learning center was inappropriate. In between hearing dates, counsel prepared for the hearings and explored the possibility of settlement with the District.

### C. *The Interim Finding of the IHO*

The IHO rendered an interim finding on August 20, 2002. In this finding the IHO held that the IEP lacked required information and that there was an absence of procedural safeguards afforded Plaintiffs. The failure to conduct a physical examination of D.M. led to the holding that the IEP was invalid and must be nullified. Despite the holding that the IEP was inappropriate, the IHO rejected placement of D.M. at the "Sappo School," a placement suggested by Plaintiffs. In light of these findings the IHO ordered the CSE to re-evaluate D.M. and make a new recommendation regarding his classification and placement. Finally, the IHO directed Plaintiffs and the District to investigate and consider other possible programs and/or schools for placement for the 2002–2003 school year.

### D. *The Parties' Interim and Final Settlement*

On September 5, 2002, the parties entered into a 90 day stipulation, so ordered by the IHO. This stipulation provided that D.M. would be placed in a mainstream setting at the Riverhead Charter School, ("Riverhead") a school not previously identified in any of the District IEP's. The stipulation further provided for student and parent counseling sessions and speech and language therapy sessions as well as special education resource room services. Also provided for was D.M.'s transportation to Riverhead and a bus matron if necessary. Finally, the stipulation stated that it would be so ordered by the IHO and that if a dispute were to arise over its implementation, that dispute would be submitted to the IHO for his determination. The IHO so ordered the stipulation on September 15, 2002.

The parties reached final agreement as to the proper placement for D.M. on De-

cember 16, 2002. In a letter of that date, the parties outlined the services that D.M. would receive and the location where those services would be rendered (the "December 16 Agreement"). Essentially, the December 16 Agreement set forth the same agreement as the parties' earlier stipulation. D.M. was to attend Riverhead and receive the special education and counseling services outlined above. The December 16 Agreement was signed by the parties and so ordered by the IHO. Like the September stipulation, the December 16 Agreement provided that any dispute regarding the implementation of the parties' agreement would be submitted to the IHO for determination. Finally, the December 16 Agreement withdrew Plaintiffs' demands for an impartial hearing regarding the 2002–2003 school year and all years prior thereto, so long as the agreement reached was specifically enforceable by the parties.

### E. *The Request for Attorneys Fees and the Present Motions*

Plaintiffs take the position that they are prevailing parties and are therefore entitled to an award of attorneys' fees. Defendants, on the other hand, argue that because this case ended in a settlement that did not materially alter the parties' relationship, no award of fees is allowed. After outlining relevant legal principles, the court will turn to the merits of the motion.

## DISCUSSION

### I. *Legal Principals*

#### A. *Summary Judgment Standards*

Summary judgment is appropriately granted where there is no genuine issue as to any material fact. This summary judgment standard governs actions for an award of attorneys fees under the IDEA. *M.S. o/b/o I.O. v. New York City Bd. of*

*Educ.*, 2002 WL 31556385 *2 (S.D.N.Y. 2002).

### B. *IDEA: Statutory Scheme and Attorneys' Fees*

The IDEA ensures that all children are provided a "free appropriate public education ... and related services designed to meet their unique needs ...." 20 U.S.C. § 1400(d). A "free and appropriate" education is one that benefits a child's particular educational needs with a program specifically tailored to that child. *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181–82, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

If a parent or guardian of a child successfully enforces a child's rights in any action or proceeding brought pursuant to the IDEA, the court may award a reasonable attorneys' fee as part of the costs of the action. 20 U.S.C. § 1415(i)(3)(B). To qualify for an award of fees, the party enforcing the child's rights must be a "prevailing party" within the meaning of the IDEA. 20 U.S.C. § 1415(i)(3)(B).

### C. *Prevailing Party Status*

An IDEA plaintiff is entitled to an award of attorneys' fees as a "prevailing party," if relief has been obtained and there is a causal connection between the relief obtained and the administrative proceeding or litigation between the parties. *J.C. v. Regional Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 123 (2d Cir.2002). When measuring a parties' success, the prevailing party standard has been interpreted generously by the Supreme Court and the Second Circuit. *See Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); *G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 81 (2d Cir.1999); *K.R., as Natural Mother and On Behalf of M.R. v. Board of Educ.*

of *Brentwood Union Free Sch. Dist.,* 66 F.Supp.2d 444, 449–50 (E.D.N.Y.1999). Thus, it has been held that parents are prevailing parties if "they succeed on any significant issue on litigation which achieves some of the benefit the parties sought in bringing the suit." *New Britain Board of Education,* 173 F.3d at 81. The relief obtained need not be identical to all relief initially demanded; the prevailing party need only "show a causal connection between the relief obtained and the litigation in which fees are sought." *Id.,* quoting, *Koster v. Perales,* 903 F.2d 131, 135 (2d Cir.1990).

█ To qualify for an award of statutory fees, however, the alteration in the parties' relationship must have occurred because of a disposition that is judicially sanctioned. *J.C. v. Regional Sch. Dist. 10, Bd. of Educ.,* 278 F.3d at 124–25. This requirement was made clear by the decision of the Supreme Court in *Buckhannon Board and Care Home, Inc. v. West Virginia Dep't. of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). There, the Supreme Court rejected the "catalyst" theory relied upon by several circuit courts of appeal to justify an award of fees. Pursuant to that theory, fees were awarded if the action or proceeding acted as a catalyst to bring about a voluntary change in the defendant's conduct. Rejecting the catalyst theory, the Supreme Court held that an award of fees was appropriate only if there had been a court-ordered change in the parties' relationship, such as a change about by a judgment after trial or a consent decree. A private settlement, on the other hand, was held to lack the necessary "judicial imprimatur" necessary to a holding that a party has prevailed so as to justify an award of statutory fees. *Buckhannon,* 532 U.S. at 605, 121 S.Ct. 1835.

Although *Buckhannon* applied the attorneys fees provisions of the Americans With Disabilities Act and the Fair Housing Amendments Act of 1988, it is clear that the standards referred to therein are equally applicable to actions brought pursuant to the fee shifting statutes forming the basis of this action. *See New York State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n.,* 272 F.3d 154, 158 (2d Cir.2001) (applying *Buckhannon* to 42 U.S.C. § 1988); *J.C. v. Regional Sch. Dist. 10, Bd. of Educ.,* 278 F.3d at 123–25 (applying *Buckhannon* to the IDEA and the Rehabilitation Act).

## II. *Disposition of the Motion*

Defendants attack Plaintiffs' characterization as prevailing parties on two fronts. First, it is argued that Plaintiffs did not achieve results sufficient to confer prevailing party status. Second, Defendant argues that a settlement agreement so ordered by an IHO lacks the judicial imprimatur required by *Buckhannon.* The court disagrees with both positions.

### A. *Plaintiffs Have Achieved the Necessary Level of Success*

█ The District's argument regarding the results achieved argues that the placement at Riverhead, was one that was always available to Plaintiffs that could have been requested and granted without the necessity for a hearing. In support of this argument, the District submits only an attorney affidavit. That affidavit indicates, as discussed above, that the Plaintiffs' initial placement request (the Sappo School) was rejected by the IHO. The affidavit does not point out, however, that Riverhead was not the placement recommended for D.M. in the District IEP that formed the basis for the hearing. That placement put D.M. in a completely segregated BOCES school, a choice that Plain-

tiffs found unacceptable and prompted the request for the hearing.

The District's affidavit of counsel also concedes, as it must, that as part of the parties' settlement, the District has agreed to provide certain specific services to D.M. while enrolled at Riverhead—services that were not included in the IEP's drafted by the District prior to the independent hearing.

While the court recognizes that Plaintiffs were not able to place D.M. in the school initially sought, the court holds that sufficient success was attained to achieve prevailing party status. *See New Britain Board of Education,* 173 F.3d at 81 (success on any significant issue on litigation which achieves some of the benefit the parties sought in bringing the suit is sufficient to confer prevailing party status).

Having determined that Plaintiffs were sufficiently successful to be deemed prevailing parties, the court turns to the issue of whether the ordering of a settlement agreement by the IHO constitutes sufficient "judicial imprimatur" to allow an award of fees after *Buckhannon.*

### B. *The Agreement Is Judicially Sanctioned Within the Meaning of Buckhannon*

■ When discussing the types of judicially sanctioned actions that can confer prevailing party status, the Supreme Court in *Buckhannon* referred to a judgment on the merits as well as court ordered consent decrees. *Buckhannon,* 532 U.S. at 604, 121 S.Ct. 1835. One Circuit Court of Appeals has held that these two examples are the exclusive dispositions that can be relied upon to support a fee application. *See Christina A. v. Bloomberg,* 315 F.3d 990, 993 (8th Cir.2003).

The Second Circuit, however, has interpreted *Buckhannon* differently. Specifically, that court has held that a judgment on the merits and a consent decree are but two examples of the types of dispositions that can support a statutory attorneys' fee award. Thus, the Second Circuit has interpreted *Buckhannon* as leaving the door open for an award of fees in additional situations that may be deemed judicially sanctioned. *See Roberson v. Giuliani,* 346 F.3d 75, 81–82 (2d Cir.2003). In so holding, the Second Circuit has joined the majority of circuit courts of appeal considering thus post-*Buckhannon* issue. *See id.* at 80 (listing cases).

In *Roberson v. Giuliani,* 346 F.3d 75, 81–82 (2d Cir.2003), the Second Circuit interpreted *Buckhannon* to allow an award of fees in a case disposed of by way of a so ordered settlement agreement. There, the so ordering of the agreement, along with the retention of jurisdiction, was held to give the settlement agreement sufficient judicial imprimatur to satisfy *Buckhannon* and support an award of attorneys' fees in a case seeking fees pursuant to 42 U.S.C. § 1988. *Roberson,* 346 F.3d at 81–82.

Because it is clear that decisions interpreting the Civil Rights fee-shifting statute apply with equal force to the IDEA and the Rehabilitation Act, *see J.C. v. Regional Sch. Dist.,* 278 F.3d at 123–25, the Second Circuit's holding in *Roberson* leads this court to conclude that the disposition of the parties' dispute here was judicially sanctioned within the meaning of *Buckhannon* and that, therefore, an award of attorneys' fees is justified. Like the district judge in *Roberson,* the hearing officer in this matter so ordered the parties' settlement agreement and retained jurisdiction to hear any dispute regarding implementation of the agreement. Under these circumstances, the parties' agreement is more than a voluntary change in position— it is a judicially sanctioned settlement eligible for an award of prevailing party attorneys' fees.

Indeed, other courts considering this issue, even before *Roberson,* have held that an award of IDEA fees is appropriate under *Buckhannon,* where, as here, the hearing officer has so ordered the parties agreement. In *M.S. o/b/o I.O. v. New York City Bd. of Educ.,* 2002 WL 31556385 (S.D.N.Y.2002), for example, the court held that prevailing party fees were appropriate in an IDEA case where the hearing officer so ordered the parties' agreement. *Id.* at *3. *Accord Brandon K. v. New Lenox Sch. Dist.,* 2001 WL 1491499 *2 (N.D.Ill.2001) (awarding IDEA fees where parties' agreement was transcribed and entered as a formal agreed order of the hearing officer). *See also T.D. v. LaGrange Sch. Dist. No. 102,* 349 F.3d 469, 478–79 (7th Cir. 2003) (recognizing that a so ordered settlement can support an IDEA attorneys' fee award but declining to award fees in case where court did not so order or exercise continuing jurisdiction over settlement); *J.S. & M.S. v. Ramapo Central Sch. Dist.,* 165 F.Supp.2d 570 (S.D.N.Y.2001) (denying an award of fees on the ground that the settlement was not ordered by the hearing officer).

In light of the foregoing, the court holds that the order of the hearing officer constitutes the necessary judicial imprimatur to confer prevailing party status on Plaintiffs within the meaning of the IDEA. Accordingly, *Buckhannon* is no bar to an attorneys' fee award.

III. *The Amount of Fees to be Awarded*

Plaintiffs' counsel has submitted copies of invoices for services rendered in connection with the matter. It is unclear to the court, however, whether the invoices are cumulative. To facilitate an appropriate award, Plaintiffs' counsel is ordered to submit to the court one statement detailing all fees in this matter. Upon receipt of that final statement the court will enter an order awarding a reasonable fee.

### CONCLUSION

Plaintiffs' motion for an award of attorneys' fees is granted. Plaintiffs' counsel is directed to submit a statement of fees as set forth herein. The court will review that statement and enter an appropriate order. Defendants' cross motion for summary judgment is denied. The Clerk of the Court is directed to terminate both parties' motions.

SO ORDERED.