**E.S. and M.S. o/b/o B.S., Plaintiffs,**

**v.**

**KATONAH–LEWISBORO SCHOOL DISTRICT, Defendant.**

**No. 09–cv–4770 (LAP).**

United States District Court, S.D. New York.

April 20, 2011.

---

Giulia Frasca, Peter David Hoffman, Law Office of Peter D. Hoffman, P.C., Katonah, NY, for Plaintiffs.

Mark Craig Rushfield, Shaw, Perelson, May & Lambert, LLP, Poughkeepsie, NY, for Defendant.

### MEMORANDUM & ORDER

LORETTA A. PRESKA, Chief Judge.

On October 4, 2010, the Court entered judgment for Plaintiffs in this civil rights action brought under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* On October 18, 2010, Plaintiffs moved for an award of fees and expenses incurred during the course of litigation. For the reasons that follow, Plaintiffs' motion [dkt. no. 48] is GRANTED in part. The Court awards attorneys' fees to Plaintiffs in the amount of $153,870.40, paralegal fees in the amount of $2,088.75, and expenses in the amount of $1,017.69.

### I. BACKGROUND

#### A. The Firm and its Employees

Plaintiffs were represented by the Law Office of Peter D. Hoffman, P.C. ("Firm"), a private law firm in Katonah, New York. (Affirmation of Giulia Frasca in Support of Pls.' Motion for Reasonable Att'ys' Fees and Costs ("Frasca Aff.") ¶¶ 1–2.) Three attorneys work at the Firm: Peter D. Hoffman, Esq., Giulia Frasca, Esq., and Jamie Mattice, Esq. (*Id.* ¶ 2.) Betty J. Potenza, Esq., worked at the Firm from 2007–2010. (*Id.* ¶ 9.) She left the firm on April 30, 2010. (*Id.* SI 10.) The Firm employs paralegals and provides internships for undergraduate and law school interns. (*Id.* ¶ 2.) Approximately seventy-five percent of the Firm's caseload is IDEA-related litigation. (*Id.*)

Mr. Hoffman is the Firm's Managing Partner. (*Id.* ¶ 5.) He began litigating IDEA cases in 1996. (*Id.*) Mr. Hoffman graduated from the City University of New York, School of Law, in May 1993.

(Affirmation of Peter D. Hoffman in Support of Pls.' Motion for Reasonable Att'ys' Fees and Costs ("Hoffman Aff.") ¶ 43.) Mr. Hoffman has spent the majority of his career litigating civil rights cases, particularly in the arena of education law. (*Id.* ¶¶ 53–54.)

Ms. Potenza was an Associate Attorney at the Firm from 2007–2010. (Frasca Aff. ¶ 6.) She began her career as a paralegal in 1973, assisting with matrimonial law, family law, and wills and estates matters. (*Id.*) Ms. Potenza graduated from Pace University School of Law in 1995. (*Id.*) Until 2007, her practice focused on matrimonial law, family law, wills and estates, and personal injury cases. (*Id.* ¶ 8.) Her experience with special education litigation began in 2007, when she became associated with the Firm. (*Id.* ¶ 9.)

Ms. Frasca is an Associate Attorney at the Firm. (*Id.* ¶ 11.) She graduated from City University of New York, School of Law, in 2007 and received an LL.M in Environmental Law from Pace Law School in 2008. (*Id.*) She began working at the Firm in September 2008. (*Id.*) Her practice primarily focuses on special education and civil rights of students with special needs. (*Id.* ¶ 13.) She also practices environmental law, civil and criminal litigation, medical malpractice, and estate law. (*Id.*)

Ms. Mattice is an Associate Attorney at the Firm. (*Id.* ¶ 14.) She graduated from New York Law School over seven years ago[1] and was previously employed as a litigation discovery attorney at Cravath, Swaine & Moore, LLP, and Paul, Weiss, Rifkind, Wharton and Garrison, LLP. (*Id.*; Pls.' Mem. at 12.) She became associated with the Firm in the spring of 2010. (Pls.' Mem. at 12.) Although Ms. Mattice has "extensive experience in e-discovery and trial presentation," (Frasca Aff. ¶ 14), Plaintiffs do not indicate whether she has any background in education law.

The Firm employed two paralegals and two law school interns to assist with this case. (Frasca Aff. ¶¶ 16–18.)

B. *Proposed Attorney Billing Rates and Costs of Litigation*

The chart below reflects proposed hourly rate for each attorney, total number of hours claimed by each attorney, and total compensation requested for each attorney.[2]

| Attorney Name | Hourly Rate[3] | Total Hours | Compensation Requested |
|---|---|---|---|
| Peter D. Hoffman | $415 | 236.44 | $98,122.60 |
| Betty J. Potenza | $325 | 443.56 | $144,157.00 |
| Giulia Frasca | $300 | 94.17 | $28,251.00 |
| Jamie Mattice | $300 | 40.59 | $12,177.00 |
| | | | Total: $282,707.60 |

Plaintiffs seek reimbursement for $2,088.75 in paralegal fees, (Hoffman Aff. Ex. 1a), and $1,017.69 in expenses for trav-

---

1. Plaintiffs did not indicate Ms. Mattice's year of graduation from law school or date of admission to the New York State Bar.

2. The data supporting this chart can be found in Exhibit 1a of Mr. Hoffman's Affirmation.

3. While Plaintiffs' counsel's rates increased over the course of this litigation, the Court will consider counsel's current rates in this fee application. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir.1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment . . . .").

el, postage, facsimile, binding, and copying (*id.* Ex. 1b.) Defendant does not contest the reasonableness of the paralegal fees or costs associated with this litigation.

Plaintiffs seek to recover a total of $289,084.29 in attorneys' fees, paralegal fees, and costs.[4] (Frasca Aff. ¶ 26.) Plaintiffs do not seek remuneration for the work done by interns. (*Id.* ¶ 18.)

## II. DISCUSSION

■ "In any action or proceeding brought under [the IDEA], the court, in its discretion, may award reasonable attorneys' fees as part of the costs ... to a prevailing party who is the parent of a child with a disability." *B.W. ex rel. K.S. v. N.Y.C. Dep't of Educ.*, 716 F.Supp.2d 336, 344 (S.D.N.Y.2010) (quoting 20 U.S.C. § 1415(i)(3)(B)(i)). "Proceedings" brought under the IDEA include administrative hearings as well as litigation before a judicial body. *See A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 75 (2d Cir. 2005).

■ When considering a claim for attorneys' fees made under a fee-shifting statute such as the IDEA, the court must undertake a two-pronged inquiry asking first whether the party seeking the award is a "prevailing party." *Mr. L. v. Sloan*, 449 F.3d 405, 407 (2d Cir.2006). "If the party is a prevailing party, the court must then determine whether, under the appropriate standard, the party should be awarded attorney's fees." *Id.*

### A. Prevailing Party

■ "[T]he prevailing party standard has been interpreted generously by the Supreme Court and the Second Circuit in terms of the degree of relief required."

*B.W. ex rel. K.S.*, 716 F.Supp.2d at 345 (quoting *D.M. ex rel. G.M. v. Bd. of Educ., Ctr. Moriches Union Free Sch. Dist.*, 296 F.Supp.2d 400, 403–04 (E.D.N.Y.2003)) (internal quotation marks omitted). The prevailing party need not prevail on all issues to qualify for attorneys' fees; rather, it must " 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.' " *Id.* (quoting *Tx. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). Not only must a prevailing party achieve a "material alteration" of the legal relationship between the parties, but that alteration must be judicially sanctioned. *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (quoting *Tx. State Teachers Ass'n*, 489 U.S. at 792, 109 S.Ct. 1486).

■ "A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were 'based on different facts and different legal theories.' " *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir.1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). On the other hand, when a plaintiff s claims for relief involve common facts and legal issues, a court should not " 'divide the number of hours expended on a claim-by-claim basis.' " *Starkey v. Somers Cent. Sch. Dist.*, No. 02–cv–2455, 2008 WL 5378123, at *2 (S.D.N.Y. Dec. 23, 2008) (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933). Thus, a court should not reduce fee requests due to unsuccessful claims if the successful and unsuccessful

---

4. The sum of requested attorneys' fees, paralegal fees, and costs equals $285,814.04. However, Plaintiffs claim entitlement to $289,084.29. Plaintiffs do not account for the difference between the two numbers.

claims are "inextricably intertwined and involve a common core of facts or are based upon related legal theories." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999) (citations and internal quotation marks omitted).

In *B.W. ex rel. K.S.*, the court found common legal and factual issues in an IDEA case where, notwithstanding the parents' partial success, the entire "case was based on the circumstances surrounding [student's] inadequate education from kindergarten through second grade." 716 F.Supp.2d at 351–52. *But cf. Starkey*, 2008 WL 5378123, at *3 (finding no common factual issues where plaintiff sought reimbursement under IDEA for several years of tuition, but prevailed only for one year of reimbursement based on a discriminatory single incident).

■ Here, Defendant concedes that Plaintiffs are a prevailing party but argues that the Court should reduce Plaintiffs' award of attorneys' fees by fifty percent because Plaintiffs succeeded in obtaining tuition reimbursement for only one of the two challenged academic years. (Def.'s Opp'n at 4–7.) This argument fails because Plaintiffs' successful and unsuccessful claims were inextricably intertwined and involved common legal and factual questions.

Plaintiffs' claim for tuition reimbursement for the 2006–2007 academic year involved the same legal issues as the claim for reimbursement for the 2007–2008 academic year. Both issues required analysis of whether B.S.'s class grouping was appropriate and whether Defendant complied with the IDEA's requirements during the years in question. Additionally, Plaintiffs' claims involved common facts. For example, one of the key issues in the determination that B.S.'s education program in 2007–2008 was inappropriate rested on the prog-

ress that B.S. made during the 2006–2007 academic year. Moreover, B.S.'s entire educational history played a role in Plaintiffs' tuition reimbursement claims for 2006–2007 and 2007–2008. Therefore, Plaintiffs' request for fees will not be reduced on the grounds that Plaintiffs were only a partially prevailing party.

## B. *Reasonableness of Fees*

■ Fees awarded under the IDEA "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished[,]" 20 U.S.C. § 1415(i)(3)(C), and the fees awarded may be reduced based on a finding that, *inter alia*, the rates charged or "time spent and legal services furnished were excessive." *Id.* § 1415(i)(3)(F)(iii). The Court of Appeals has recently attempted to clarify the approach used to calculate statutory attorneys' fees. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 189–90 (2d Cir.2008) (discussing conflicting jurisprudence on the calculation of attorneys' fees). *Arbor Hill* departed from application of the "lodestar method"—whereby the attorney's normal billing rate, adjusted to reflect the prevailing rate in the community, is multiplied by the number of hours worked to arrive at a lodestar numeric. *Id.* at 186, 190. Instead, *Arbor Hill* directed judges to use their discretion and consider case-specific variables to determine the reasonableness of the attorney's hourly rate. *Id.* at 190.

■ A reasonable hourly rate is the rate a "paying client would be willing to pay." *Id.* In determining the reasonableness of the proposed hourly rate, a court should consider the twelve factors outlined in *Johnson v. Georgia Highway Express,*

*Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974),[5] and "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. Once a court determines the reasonable hourly rate, it should use the rate to calculate the "presumptively reasonable fee." *Id.*

■ The burden is on the fee applicant to show "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *see also Stewart v. Barclay's Bus. Credit, Inc.*, 860 F.Supp. 150, 150 (S.D.N.Y.1994) (recognizing "time honored practice" of applying New York City rates in calculating attorneys' fees throughout Southern District of New York, including counties north of New York City).

■ Here, only two of the twelve *Arbor Hill* factors cut in favor of the fee request submitted by Plaintiffs' counsel: time and labor required and nature and length of the professional relationship. Counsel worked on this case from 2005 to 2010 and devoted hundreds of hours to the matter. (Hoffman Aff. ¶ 9; Hoffman Aff. Ex. 1a.)

The remaining *Arbor Hill* factors do not support Plaintiffs' requested fee. The question presented was not particularly difficult and did not require extremely experienced counsel. *Compare Yea Kim v. 167 Nail Plaza, Inc.*, No. 05–cv–8560, 2009 WL 77876, at *5 (S.D.N.Y. Jan. 12, 2009)

(awarding lead counsel $200 per hour in "procedurally simple" case involving straightforward motion practice and hearings) *with LV v. N.Y.C. Dep't of Educ.*, 700 F.Supp.2d 510, 517 (S.D.N.Y.2010) (awarding lead counsel rate of $600 per hour in a IDEA class action that "was much more complex than the ordinary single–plaintiff lawsuit").

Another factor cutting against Plaintiffs' fee request is that counsel worked on a contingency fee. *Cf. Gesualdi v. Laws Const. Corp.*, 759 F.Supp.2d 432, 445–46 (S.D.N.Y.2010) (noting that actual fee agreed to and paid by client indicates reasonableness of fee).

Additionally, Plaintiffs' counsel does not argue that they were precluded from working on other matters as a result of taking this case, the case operated on a particularly time-sensitive schedule, the amount in controversy was significant, or the case was particularly undesirable. Further, counsel did not indicate that other clients were willing to pay such high fees. To the contrary, Mr. Hoffman states that the Firm structures its fee schedule based on the prospect of recovery of statutory attorneys' fees. (Hoffman Aff. ¶ 26.)

Finally, Plaintiffs have not established that their counsel's rates are in line with the prevailing rate for legal services in their community. Further complicating the task before the Court, Plaintiffs' counsel did not submit affidavits from local attorneys attesting to the reasonableness of their proposed fee. *Cf. Heng Chan v. Sung Yue Tung Corp.*, No 03–cv–6048,

---

**5.** The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required co perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007) (relying on affidavits submitted by local attorneys attesting to determine reasonableness of proposed fee schedule).

### 1. Mr. Hoffman's Fee is Unreasonably High

■ Mr. Hoffman's proposed hourly rate of $415 per hour is unreasonably high. Although courts in this jurisdiction have awarded hourly rates exceeding $400 to attorneys in civil rights cases, such awards are only warranted in "unusually difficult and complex" cases. *Id.* at *2. The plaintiff in *Heng Chan* was represented *pro bono* by Skadden, Arps, Slate, Meagher and Flom, LLP, one of the largest and most well-regarded law firms in the world. *Id.* at *3. Lead counsel was a partner with over sixteen years of litigation experience. *Id.* Moreover, the case involved "a host of witnesses and parties, numerous boxes of documents, and depositions and investigations conducted in four languages." *Id.* Lead counsel received a fee award of $450 per hour. *Id.*

Similarly, an award of $425 per hour to lead counsel was appropriate in an action "considerably more difficult and complex than the average civil rights case." *Wise v. Kelly*, 620 F.Supp.2d 435, 445–47 (S.D.N.Y.2008). *Wise* involved a putative class action challenging New York City's enforcement of a loitering statute. *Id.* at 445. Lead counsel was a partner at Emery Celli Brinckerhoff and Abady, a fourteen-attorney firm, with eighteen years of experience in complex civil rights litigation. *Id.* at 443.

Examination of fee awards to civil rights attorneys in matters comparable to the instant action reveals that a reasonable fee for Mr. Hoffman's services is $350 per hour. *See, e.g., Coe v. Town of Blooming Grove*, 714 F.Supp.2d 439, 450 (S.D.N.Y. 2010) (noting that range of rates for civil rights litigators in the Southern District of

New York is between $225 and $375 per hour); *Torres v. City of New York*, No. 07–cv–3473, 2008 WL 419306, at *1 (S.D.N.Y. Feb. 14, 2008) (awarding $350 per hour for attorney with ten years' experience). In a recent IDEA case, lead counsel from a non-profit advocacy group was awarded $375 for her work in a suit challenging the education provided to a single student. *B.W. ex rel. K.S.*, 716 F.Supp.2d at 342. Lead counsel was an attorney with over twenty-five years of experience and had been working with the non-profit group for over ten years. *Id.* Mr. Hoffman has fourteen years of experience on special education cases. (Hoffman Aff. ¶ 4.) Therefore, based on Mr. Hoffman's litigation experience and the nature of this litigation, the Court awards him $350 per hour.

### 2. Associate Fees are Unreasonably High

■ Ms. Potenza's proposed hourly rate of $325 per hour is unreasonably high. Associates in civil rights law firms with approximately three years of experience have typically been awarded amounts ranging from $125 per hour to $200 per hour. *See Torres*, 2008 WL 419306, at *2 (collecting cases); *see also Tlacoapa v. Carregal*, 386 F.Supp.2d, 362, 369–70 (S.D.N.Y.2005) (reducing rate of associate at small civil rights firm with nine years of experience from $300 per hour to $200 per hour). Although Ms. Potenza has practiced law in New York since 1996, she had no prior experience in education law before commencing her employment at the Firm in 2007. (Frasca Aff. ¶¶ 6–9.) Consequently, the Court awards $175 per hour for her work.

■ The proposed rates of $300 per hour for Ms. Frasca and Ms. Mattice also are unreasonably high. Inexperienced first- and second-year associates at small law firms have been awarded between

$125 and $200 per hour. *See Torres,* 2008 WL 419306, at *2 (collecting cases); *see also Tlacoapa,* 386 F.Supp.2d at 369–70 (awarding $125 per hour to junior attorney with "limited experience"). Ms. Frasca graduated law school in 2007 and received an LL.M in Environmental Law in 2008. (Frasca Aff. ¶ 11.) She has been working at the Firm since 2008. (*Id.*) Ms. Mattice worked for an unspecified number of years as an attorney performing discovery in large corporate disputes before joining the Firm in 2010. (*Id.* ¶ 14) Neither Ms. Frasca nor Ms. Mattice had any experience in education law prior to joining the Firm. Consequently, based on both attorneys' limited experience, the Court awards $150 per hour for Ms. Frasca's and Ms. Mattice's work.

### C. *Reasonableness of Requested Fees*

 When determining the number of reasonable hours expended during litigation, a court may exclude hours found to be "excessive, redundant or otherwise unnecessary." *Patrolmen's Benevolent Ass'n v. City of New York,* Nos. 97–cv–7895, 09–cv–8202, 2003 WL 21782675, at *2 (S.D.N.Y. July 31, 2003) (quoting *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933). "Attorneys applying for court-ordered compensation must document the application with time records [which] should specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kahlil v. Original Old Homestead Rest., Inc.,* 657 F.Supp.2d 470, 477 (S.D.N.Y. 2009) (quoting *N.Y. State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983)) (internal quotation marks omitted). "General descriptions of completed work are sufficient." *Wong v. Hunda Glass Corp.,* No. 09–cv–4402, 2010 WL 3452417, at *4 (S.D.N.Y. Sept. 1, 2010). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in

similar time expenditures.'" *Cesario v. BNI Constr., Inc.,* No. 07–cv–8545, 2008 WL 5210209, at *7 (S.D.N.Y. Dec. 15, 2008) (quoting *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir.1992)).

 A court has discretion to make across-the-board percentage reductions to exclude unreasonable hours. *See Luciano v. Olsten Corp.,* 109 F.3d 111, 117 (2d Cir.1997). A court may make such reductions when attorneys engage in less skilled work, like filing and other administrative tasks. *See Nat'l Audubon Soc., Inc. v. Sonopia Corp.,* No. 09–cv–975, 2010 WL 3911261, at *5 (S.D.N.Y. Sept. 1, 2010). Additionally, a court should reduce the award where the requested fee is excessive because the stated number of hours is greater than that which should have been required for the work produced. *See Seitzman v. Sun Life Assurance Co. of Canada,* 311 F.3d 477, 487 (2d Cir.2002). Where, as is the case here, "the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." *Yea Kim,* 2009 WL 77876, at *4 (citation and internal quotation marks omitted).

#### 1. Fees for Administrative and Clerical Services

 A substantial portion of Plaintiffs' fee request is for administrative and clerical services performed by attorneys. Ms. Potenza, Ms. Frasca, and Ms. Mattice billed scores of hours for faxing and mailing documents, making copies, filing, scanning, preparing documents for electronic filing, electronic file management, binding documents, and Bates stamping. (*See generally* Hoffman Aff. Ex. 1a.) Consequently, Plaintiffs' fee request must be reduced

because these services are capable of being performed by non-attorney staff who would have charged a substantially lower fee. *See Nat'l Audubon Soc.,* 2010 WL 3911261, at *5; *Tucker v. City of New York,* 704 F.Supp.2d 347, 356 (S.D.N.Y. 2010).

## 2. Excessive and Unnecessary Time

■ Many of counsel's time entries are excessive and unnecessary. For example, Ms. Potenza spent more than five hours over the course of two weeks preparing a six sentence letter to the Court seeking leave to file a supplemental motion in September 2009. (Affirmation of Mark C. Rushfield in Opp'n to Pls.' Att'y's Motion for Attorney Fees and Costs ("Rushfield Aff." ¶ 21).) Plaintiffs offer the justification that the time expended on preparing the letter was reasonable because Ms. Potenza had to "investigate fully the facts in the matter and to understand the law." (Affirmation of Peter D. Hoffman in Reply to Def.'s Opp'n to Pls.' Motion for Reasonable Att'ys' Fees and Costs ("Hoffman Reply Aff.") ¶ 24.) Furthermore, Plaintiffs explain that Ms. Potenza had to "work with the parents, a psychiatric expert, and a treating psychiatrist able to support the factual arguments before she could, in good faith, proffer the evidence subject to the Supplemental Evidence Motion." (*Id.*) This rationalization is implausible. The letter merely recites the statutory causes of action, the relief sought, and the bases of jurisdiction. (Rushfield Aff. Ex. A.) No reasonable attorney could spend over five hours drafting and reviewing a six sentence letter to the court, especially where all of the information in the letter could easily be found in the complaint.

More egregiously, Ms. Potenza billed another hour of time for a "[t]elephone conference with Rushfield and Judge Robinson's Chambers" to discuss the subject of the six sentence letter she spent more than five hours preparing. (Hoffman Aff. Ex. 2 at 22.) Opposing counsel spent twelve minutes on this call. (Rushfield Aff. Ex. B.) Plaintiffs assert that Ms. Potenza's time entry included time spent in preparation for the call. (Hoffman Reply Aff. ¶ 25.) The additional forty-eight minutes Ms. Potenza spent in preparation for the call, on top of the five hours already spent preparing the letter, is excessive.

A brief review of Plaintiffs' counsel's master bill reveals other dubious entries including 5.42 hours spent by Ms. Mattice preparing motion papers for filing with the Court over the course of a single day, (Hoffman Aff. Ex. 2 at 32), 1.75 hours spent by Ms. Potenza scanning the complaint and e-mailing the PDF to the Court, (*id.* at 21), 1 hour spent by Ms. Mattice preparing a document for filing with the Court, (*id.* at 31), and 45 minutes spent by Ms. Potenza submitting a document to the Court by electronic filing, (*id.* at 22). Although scanning and filing documents would invariably take more than a few minutes to complete, it is beyond peradventure to suggest that these tasks would take as much time as counsel suggests.

## 3. Block Billing

■ Plaintiffs' counsel often engaged in block billing by combining several tasks into a single entry. The practice of block billing, although not forbidden, makes it "difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided ...." *Simmonds v. N.Y.C. Dep't of Corrections,* No. 06–CV–5298, 2008 WL 4303474, at *8 (S.D.N.Y. Sept. 16, 2008) (citing *Williams v. N.Y.C. Housing Auth.,* 975 F.Supp. 317, 327 (S.D.N.Y. 1997)). For example, Ms. Potenza spent five hours on the following task: "Finalize Motion for SJ; scan; e-mail to defense; bind; prepare Proof of Service and letter

to Court and Rushfield." (Hoffman Aff. Ex. 2 at 28.) Similarly, Ms. Frasca spent an hour on the following tasks: "Call to Rushfield, e-mails to Rushfield, discussion with Peter [Hoffman]; draft letter to Court regarding extension of time for reply; fax and save." (*Id.* at 30.) Other examples of block billing abound, making it difficult for the Court to assess the reasonableness of many of Plaintiffs' counsel's time entries.

#### 4. Plaintiffs' Total Number of Proposed Hours Must be Reduced

■ Plaintiffs' counsel's excessive, redundant, unnecessary, and vague billing requires an across-the-board reduction of the time for which they seek compensation. *See Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 172–73 (2d Cir.1998) (affirming 20% fee reduction because time entries were vague and inconsistent); *Ritchie v. Gano,* 756 F.Supp.2d 581, 583–84 (S.D.N.Y. 2010) (applying 15% reduction where counsel billed unreasonable number of hours and submitted vague entries); *Wong,* 2010 WL 3452417, at *4 (applying 15% reduction where counsel performed unnecessary work and where "an experienced attorney [w]ould not have required as much time"); *Yea Kim,* 2009 WL 77876, at *6 (applying 40% reduction where counsel expended un-

reasonable amount of time and submitted "some questionable billing entries"); *Wilson v. Nomura Securities Intern. Inc.,* 2002 WL 1560614, at *4 (S.D.N.Y. July 15, 2002). (applying 50% across-the-board reduction for "inefficiencies and excessive billing").

Mr. Hoffman's time entries were specific and detailed. He did not perform an appreciable amount of administrative work. The Court will not reduce his proposed number of hours worked.

Ms. Potenza spent a significant amount of time performing administrative tasks. Many of her time entries were vague. Moreover, she spent unreasonable amounts of time working on simple assignments. The Court reduces her total number of hours by thirty percent.

With only a handful of exceptions, Ms. Frasca's and Ms. Mattice's time entries were specific and detailed. However, due to the significant amounts of administrative work performed by both attorneys, the Court reduces their total hours by twenty and ten percent, respectively.

The chart below summarizes the fees due to Plaintiffs' counsel, incorporating the reasonable fee reductions of total hours determined by the Court.

| Attorney | Hours Claimed | Reduction | Hours Allowed | Rate | Total |
|----------|--------------|-----------|---------------|------|-------|
| Peter D. Hoffman | 236.44 | 0% | 236.44 | $350 | $ 82,754.00 |
| Betty J. Potenza | 443.56 | 30% | 310.49 | $175 | $ 54,335.75 |
| Giulia Frasca | 94.17 | 20% | 75.34 | $150 | $ 11,301.00 |
| Jamie Mattice | 40.59 | 10% | 36.53 | $150 | $ 5,479.65 |
| Total: | | | | | $153,870.40 |

### III. *CONCLUSION*

For the foregoing reasons, Plaintiffs' motion [dkt. no. 48] is GRANTED in part for attorneys' fees in the amount of $153,870.40, paralegal fees in the amount of $2,088.75, and costs in the amount of $1,017.69. The Clerk of Court is respect-

fully directed to terminate the pending motion.

SO ORDERED.