**Khaled KASSIM, Plaintiff–Appellant,**

**v.**

**CITY OF SCHENECTADY and Michael T. Brockbank, Defendant–Appellees.**

**Docket No. 03–9283.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 30, 2004.
Decided: July 18, 2005.

248

John L. Orfan, Friedman, Hirschen, Miller & Campito, P.C., Schenectady, NY, for Defendant–Appellees.

Sara A. Duncan, Law Offices of Duncan and Duncan, Albany, NY, for Plaintiff–Appellant.

Before: LEVAL and KATZMANN, Circuit Judges.*

LEVAL, Circuit Judge.

Plaintiff Khaled Kassim appeals from two judgments in his favor, one for damages, one for attorney's fees, which plaintiff contends were insufficient. Kassim brought this suit under 42 U.S.C. § 1983 against the City of Schenectady ("City") and its corporation counsel, Michael T. Brockbank (collectively "defendants"), alleging that defendants violated his due process rights under the Fourteenth Amendment by evicting him from a property where he operated a convenience store, without prior notice or opportunity to be heard.

The United States District Court for the Northern District of New York (David N. Hurd, J.) granted Kassim's motion for partial summary judgment as to defendants' liability and ordered a jury trial to determine damages. *Kassim v. City of Schenectady*, 255 F.Supp.2d 32 (N.D.N.Y. 2003). On the trial of damages, the jury awarded compensatory damages of $2500 and denied punitive damages. On appeal, Kassim contests principally a court ruling limiting the scope of damages and an evidentiary ruling that limited the use of some of his evidence. In addition, Kassim contends that, in awarding him attorney's

* The Honorable Ellsworth Van Graafeiland, who was a member of the panel, died following argument, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* 2d Cir. R. 0.14(b).

fees under 42 U.S.C. § 1988 as the prevailing party, the court applied incorrect law, and thus abused its discretion, in awarding a fee substantially below the lodestar amount determined by reference to attorney hours and hourly fee.

As for the award of damages, we reject Kassim's contentions. As for the reduction of the attorney's fee award, we vacate the award and remand because we cannot tell from the explanations given by the district court whether the court's ruling was consistent with governing law.

## BACKGROUND

Kassim operated a convenience store, called Victory Market, in rented space at 605 Craig Street in Schenectady, New York. *Kassim,* 255 F.Supp.2d at 34. Kassim's lease was not recorded. *Id.* Because the owner of the property was delinquent in paying $11,827.78 in taxes, the City instituted foreclosure proceedings. *Id.* at 34–35. Although defendant Brockbank, the City's corporation counsel, was aware of the Victory Market, notice of the foreclosure proceeding was sent only to the owner; no notice was given to Kassim. *Id.* at 35. A default judgment of foreclosure was entered on April 7, 2001, awarding the City possession of 605 Craig Street. *Id.*

On April 23, 2001, City officials (including defendant Brockbank, a city carpenter, and police officers) arrived at the Victory Market with a notice to vacate. *Id.* This was the "first and only notice plaintiff received to vacate the premises." *Id.* at 36. Kassim left the premises that day with cash, lottery tickets, and cigarettes, and was told that he had thirty days to remove the remainder of his property. *Id.*

Kassim's complaint, filed February 12, 2002, sought compensatory and punitive damages. The district court granted Kassim's motion for partial summary judg-

ment of liability. *Id.* at 42. The court ruled as a matter of law on virtually undisputed material facts that Kassim's procedural due process rights were violated because he was entitled to notice and an opportunity to be heard prior to being evicted. The court ordered a jury trial to determine the amount of Kassim's damages. *Id.*

Defendants moved prior to trial to limit Kassim's damages. The court granted the motion, ruling that damages would be limited to lost or damaged property, a thirty-day period of lost profits (on the theory that, had Kassim received thirty days notice before being required to close down his business, that would have been constitutionally adequate), and punitive damages. (Kassim had not sought damages for emotional distress.) During the trial, Kassim attempted to introduce an English translation of notebooks written in Arabic, which were kept in Kassim's store and contained daily entries from February 2001 to April 23, 2001 (the day of eviction), showing receipts and expenditures. Defendants objected to the introduction of the exhibit. The court admitted the books, but only "for the limited purpose of showing ... that this was a going business at the time and it was in operation." The notations of receipts and expenditures were thus excluded for the purpose of showing lost profits.

The jury awarded $2500 in compensatory damages for lost profits, but awarded nothing for loss and/or damage to property and denied punitive damages. The court denied plaintiff's motion to set aside the jury verdict.

Plaintiff then moved, pursuant to 42 U.S.C. § 1988, for attorney's fees in the amount of $65,400, based on a claimed total of 477.5 hours of attorney time. The court found in a memorandum decision and

order dated October 29, 2003, that "when the narrow issue *and final result* are taken into consideration, [the hours claimed] are entirely excessive, redundant, and unnecessary." (emphasis added). The court found that ninety attorney hours would have been appropriate, resulting in a fee of $12,000, which the court awarded.

Kassim now appeals from the award of both damages and attorney's fees.

## DISCUSSION

### 1. The Amount of Damages

Kassim's appeal from the judgment awarding only $2500 in compensatory damages is clearly without merit and easily answered.

#### a. *Motion in Limine*

■ Kassim contends that the court's limine ruling, limiting any compensatory award to loss of property and thirty days of lost profits, and implicitly denying damages for lack of a pre-deprivation hearing, was error. We disagree.

Kassim appears not to dispute that thirty days notice would have met the requirements of due process. Accordingly, we need not rule on the adequacy of thirty days notice. Kassim's principal argument is rather that he is entitled to recover the entire value of his business, because prior to the eviction he had no opportunity to be heard. While defendants do not dispute the district court's conclusion that the denial of a pre-eviction opportunity to be heard was a violation of his due process rights, Kassim has made no showing of any loss or practical harm he suffered as a result of that deprivation. Beyond vague, conclusory assertions, he has identified neither facts nor arguments he could have advanced in a pre-eviction hearing that might have obviated his eviction or reduced his losses. Kassim furthermore

does not dispute that he failed to pursue post-deprivation remedies that were available to him to contest his eviction. Having shown no harm or loss attributable to the failure to give him a pre-deprivation hearing, he has shown no reason why the court's restriction on compensatory damages deprived him of any entitlement. *See Carey v. Piphus,* 435 U.S. 247, 254–64, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (discussing the need to demonstrate actual injury to justify damages exceeding a nominal award); *Patterson v. City of Utica,* 370 F.3d 322, 337 (2d Cir.2004) (noting that a plaintiff "may ... be entitled to collect compensatory damages, if he can prove that he suffered actual injury as a result of the denial of due process"); *McCann v. Coughlin,* 698 F.2d 112, 126 (2d Cir.1983) ("It is well established that to collect compensatory damages in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff must prove more than a mere violation of his constitutional rights. He must also demonstrate that the constitutional deprivation caused him some actual injury.").

#### b. *Exclusion of Business Records*

Kassim contends the district court committed prejudicial error in refusing to receive an English translation of notes made by plaintiff in Arabic to show the daily receipts and expenditures of the store for the purpose of demonstrating lost profits. We find no error in the court's ruling, although we do not agree with the reasons given for it by the district court.

The reasons given by the court for the exclusion were not entirely clear. An explanation for the exclusion was based on the document's seeming inconsistency with Kassim's recent tax returns, which apparently showed lower profits than the notebooks. The court stated:

You can't have it both ways. He can't be claiming to this jury that he's making a net profit of hundreds of dollars each day and then claiming income tax returns in which he either takes a loss or makes a minimal profit of a hundred dollars for the whole year.

In refusing to allow the notes to be presented to the jury, the court seemed to be saying one of two things: (i) as between a party's two inconsistent statements, the court may decide which was more reliable and allow only that one to be presented to the jury, or (ii) where a U.S. taxpayer declares low earnings on his tax return in order to get the benefit of low taxes, the taxpayer is estopped from inconsistently claiming higher earnings in a separate civil proceeding against a private party in which a claim of higher earnings would be advantageous. We think neither explanation would justify the court's ruling.

■ Where a party has made a prior statement inconsistent with the one the party seeks to advance at trial, a question of credibility arises, which is for the jury, not the judge, to assess. *See* Fed.R.Evid. 607, 613; *see also United States v. Hale,* 422 U.S. 171, 176, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *United States v. Strother,* 49 F.3d 869, 874 (2d Cir.1995). Nor is there a rule of estoppel, based on fealty to the United States Treasury, that one who has claimed low earnings on tax returns in order to secure a low tax burden is estopped from inconsistently claiming higher earnings in a civil proceeding against a private party. The credibility of plaintiff's evidence of his business profits, in light of its inconsistency with his tax return, was for the jury to assess.

■ Nonetheless, the exhibit offered by plaintiff was properly excluded. The exhibit was purportedly a translation from Arabic prepared by Marcia Parker. Parker, however, admitted in her testimony she neither speaks nor reads Arabic and that her so-called translation consisted of what plaintiff told her to write. Parker did not testify that she had accurately translated the notes. Nor did Kassim testify that he had done so. There was no foundation to establish that the exhibit was a competent translation of the Arabic notes. The exhibit and testimony failed to satisfy the requirement of Federal Rules of Evidence 602, 702, and 901(a). Defendants' objection to the exhibit was properly sustained.

## 2. Attorney's Fees

While recognizing that Kassim was the "prevailing party," and thus presumptively entitled to "reasonable" attorney's fees under 42 U.S.C. § 1988, the district court declined to award the full requested lodestar-based fee of $65,400, premised on 477.5 hours of attorney time. Instead, the court allowed an aggregate of ninety hours, as between plaintiff's two attorneys, resulting in a fee of $12,000. The court's opinion explaining the reduction seems strongly to imply that, regardless of the result achieved in the litigation, the time claimed by Kassim's two attorneys was excessive and unreasonable. The court added, however, that "when the narrow issue *and final result* are taken into consideration, [the hours claimed] are entirely excessive, redundant, and unnecessary" (emphasis added). The court's reference to the "final result" suggests either of two rather different meanings. The court might have meant that the dispute concerned only $2500 and that a fee of $65,400 for such a small matter was disproportionate and excessive. Alternatively, the court might have meant that, while considerably larger amounts were at stake in the dispute, plaintiff's low degree of success in winning only $2500 made it inappropriate to award such a high attorney's fee. We

cannot tell from the court's explanation which was its reason or to what extent it affected the award. Plaintiff claims it was error to reduce the fee based on the "final result" of the litigation.

### a. Disproportion

■ One sentence in the court's opinion seems to suggest that the court considered the fee application disproportionate to the financial value of this case. In reviewing plaintiff's application for attorney's fees, the court stated, in apparent astonishment: "This results in a total legal fee application of $75,825 for a case in which plaintiff received a verdict of $2500." [2] If the district court reduced the fee based on the perceived disproportionality of such a large fee in a matter involving only $2500, this was error for at least two reasons. First, in litigating a matter, an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel and of the court. If the attorney is compelled to defend against frivolous motions and to make motions to compel compliance with routine discovery demands, or to respond to unreasonable demands of the court for briefing or for wasteful, time-consuming court appearances, the hours required to litigate even a simple matter can expand enormously. It is therefore difficult to generalize about the appropriate size of the fee in relation to the amount in controversy. Second, § 1988 was enacted in part to secure legal representation for plaintiffs whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements. See City of Riverside v. Rivera, 477 U.S. 561,

576–78, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (plurality opinion); id. at 586, 106 S.Ct. 2686 (Powell, J., concurring in judgment).

Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation. See Quaratino v. Tiffany & Co., 166 F.3d 422 (2d Cir.1999) (Quaratino II) (rejecting a "billing judgment" rule that would limit the awardable fee to one rationally related to the recovery that could be expected ex ante); Cowan v. Prudential Ins. Co. of Am., 935 F.2d 522 (2d Cir.1991); DiFilippo v. Morizio, 759 F.2d 231 (2d Cir.1985); see also Lunday v. City of Albany, 42 F.3d 131, 134–35 (2d Cir.1994) (per curiam); Dunlap–McCuller v. Riese Org., 980 F.2d 153, 160 (2d Cir. 1992); Grant v. Bethlehem Steel Corp., 973 F.2d 96, 101–02 (2d Cir.1992). If the district court reduced the fee in the belief that the claimed hours were simply disproportionate in a case involving a $2500 injury, without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances, this was error.

### b. Lack of Success

It is also possible that the court reduced the attorney's fee award because of its perception that plaintiff achieved a low degree of success in securing the objec-

---

**2.** The district court construed Kassim's application as seeking $75,875, based on $65,400 for which contemporaneous records were submitted and $10,475 for which no such records were kept. Kassim asserts that only $65,400 was requested. The difference is immaterial to our resolution, and we have assumed a request of $65,400 for the purposes of this opinion.

tives of the litigation. Because this question has been the subject of uncertainty in our decisions, we review the law as it has developed on the question, considering first the most relevant decisions of the Supreme Court.

■ The Supreme Court has consistently stressed the importance of the degree of the plaintiff's success in the litigation as a factor affecting the size of the fee to be awarded. In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the plaintiffs, who brought a variety of factually and legally distinct claims, achieved considerable success on some of their claims but lost on others. The district court awarded an attorney's fee of the full lodestar amount, refusing to eliminate hours devoted to the pursuit of unsuccessful claims. *Id.* at 428–29, 103 S.Ct. 1933. The Supreme Court vacated the award and took the "opportunity to clarify the proper relationship of the results obtained to an award of attorney's fees." *Id.* at 432, 103 S.Ct. 1933.

Reviewing the large variety of factors relevant to an award of attorney's fees, the Court concluded that "the most critical factor is the degree of success obtained." *Id.* at 436, 103 S.Ct. 1933. The Court elaborated on this observation, both in the context of a suit involving a number of "distinctly different claims for relief that are based on different facts and legal theories," *id.* at 434, 103 S.Ct. 1933, and cases which "present only a single claim" or which "involve a common core of facts or will be based on related legal theories," *id.* at 435, 103 S.Ct. 1933. In either type of case, the Court explained, the "degree of success obtained" is "the most critical factor." *Id.* at 436, 103 S.Ct. 1933; *see also id.* at 440, 103 S.Ct. 1933. In the first type of case involving different claims,

> counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

*Id.* at 435, 103 S.Ct. 1933 (internal quotation marks and citations omitted).

In the more unitary cases—those involving a common core of facts or related legal theories—it is more

> difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee ... encompass[ing] all hours reasonably expended .... [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit....
>
> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.

*Id.* at 435–36, 103 S.Ct. 1933. The Court stressed:

> [T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988.... [W]here the plaintiff achieved only limited success, the district court should award only that

amount of fees that is reasonable in relation to the results obtained.

*Id.* at 440, 103 S.Ct. 1933.

The Supreme Court returned to the issue of how degree of success should affect an attorney's fee award in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). There, the jury found that a defendant was liable for the deprivation of a civil right, but did not proximately cause the plaintiffs any harm. The plaintiffs recovered a damage award of only $1, representing nominal damages. The district court awarded $280,000 in attorney's fees under § 1988. *Id.* at 106–08, 113 S.Ct. 566. The Court of Appeals reversed the district court's award of attorney's fees, reasoning that the plaintiffs could not be properly considered "prevailing parties." *Id.* at 107, 113 S.Ct. 566. Although disagreeing with the reasoning of the Court of Appeals, the Supreme Court affirmed the result. Because the award of $1 in damages altered the legal relationship between the parties in a manner that benefitted the plaintiffs, the Court found that the plaintiffs were the "prevailing party" as that term is used in § 1988. *Id.* at 111–12, 113 S.Ct. 566. Nonetheless, because the amount of the plaintiffs' recovery was inconsequential and merely nominal, the plaintiffs were held to be entitled to no fee at all. *Id.* at 114–16, 113 S.Ct. 566. In reaching this conclusion, the Court repeated the mantra of *Hensley* that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Id.* at 114, 113 S.Ct. 566 (internal quotation marks omitted). The Court further explained: " 'Where recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.' " *Id.* (quoting *City of Riverside,* 477 U.S. at 585, 106 S.Ct. 2686

(Powell, J., concurring in judgment) (omission in original)).

While the Supreme Court's words emphasizing the crucial importance of the degree of the plaintiff's success in determining the fee have been broad and forceful, it is at least arguable that its holdings do not directly cover the instant case. This is a unitary case—involving a common core of facts, litigated on a single theory or closely related theories—in which plaintiff may have achieved a disappointing degree of success, but recovered more than merely nominal damages. In *Hensley,* while the Court's words broadly covered both cases involving discrete claims and unitary litigation, the *Hensley* case itself involved discrete claims, with the plaintiff prevailing as to some but not others. Thus, the Court's broad pronouncement on unitary cases was arguably dictum. *Farrar,* in which the Court employed similar language, was a case of a common nucleus of facts, but was arguably different from this case in that it involved a plaintiff who won only a token award, as opposed to Kassim, who won a real compensatory award, though of disappointing amount.

In prior decisions, we have questioned whether the broad language of *Hensley* and *Farrar* was properly applicable to unitary cases where the plaintiff won more than a nominal or token award. In *Quaratino v. Tiffany & Co.,* 129 F.3d 702 (2d Cir.1997) (*Quaratino I*), *vacated and superseded by Quaratino II,* in which the plaintiff had won a judgment of approximately $158,000 on her claim of employment discrimination, a panel of this court initially rejected the proposition that the plaintiff's award of attorney's fees could be properly reduced from the lodestar by reason of lack of success, construing *Farrar*'s emphasis on the importance of the degree

of a plaintiff's success as "limited to the context where the plaintiff only nominally 'wins' at trial." 129 F.3d at 708. The panel's original opinion could have been read to "suggest that a district court may not reduce the fee award below the lodestar ... because of the low degree of success, unless the plaintiff won no more that a nominal or technical victory." *See Quaratino II*, 166 F.3d at 427 n. 9. However, after the full court voted to rehear the matter *en banc*, the panel amended its opinion, deleting the particular suggestion and clarifying that it offered no view on the question. *See id.*

We have since addressed the question in at least two cases in which a plaintiff's suit was of a unitary type, based on a common nucleus of facts, where the plaintiff won a substantial judgment, and both times have affirmed district court reductions of a lodestar fee by reason of the plaintiff's limited degree of success. In *Green v. Torres*, 361 F.3d 96 (2d Cir.2004) (per curiam), the plaintiff sued the City of New York and five police officers, asserting that his arrest and prosecution on charges that were eventually dismissed violated his rights. Shortly before trial, the plaintiff voluntarily dropped some of his claims. *Id.* at 98. At trial, the plaintiff won a judgment of $50,000 in compensatory damages, plus $8508 in punitive damages. *Id.* The district court reduced the lodestar by twenty percent based on the plaintiff's limited success, finding that the plaintiff had pursued " 'inflated claims ... to the eve of trial' and 'that the only claims that were ever likely to prevail were those against [one detective] for false arrest and abuse of process.' " *Id.* at 98. We affirmed the reduction of the fee award, noting that "the degree of success obtained by the plaintiff is the most important factor in determining the appropriate fee award," *id.* at 99, and deferring to the district court's judgment in order "to allow the fee

award to accurately reflect the partial success obtained by the plaintiff," *id.* at 100.

Then in *Abrahamson v. Board of Education*, 374 F.3d 66 (2d Cir.2004), we approved a similar fee reduction. The plaintiffs, who were teachers over fifty-five years of age in the defendant school district, sued to invalidate a new provision in the retirement options provided by the district's collective bargaining agreement, on the theory that it violated the Age Discrimination in Employment Act ("ADEA") by offering to some teachers, who became eligible for retirement after the plaintiffs, a beneficial option ("Option # 2") that was not available to the plaintiffs. *Id.* at 69–70. The plaintiffs' main objective was to secure an injunction requiring the defendant to make Option # 2 available to them, as well as to those newly qualifying. The district court ruled in the plaintiffs' favor to the effect that the offer of Option # 2 to the newly qualifying teachers but not to the plaintiffs constituted discrimination in violation of the ADEA. *Id.* at 70. However, rather than requiring the school board to make Option # 2 available to the plaintiffs, the district court's injunction allowed the school board to bring itself into compliance with the ADEA by ceasing to offer Option # 2 at all. *Id.* Turning to the plaintiffs' fee demand, the district court denied the fee altogether—on the theory that the plaintiffs, having failed to win an injunction that would compel the district to offer them Option # 2, were not the prevailing party. *See id.* at 78. We reversed, finding that the plaintiffs were a prevailing party. *Id.* at 79. On the other hand, because the plaintiffs had failed to win an injunction on terms more favorable to them, they had "achieved only partial or limited success." *Id.* at 79 (quoting *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933). Because the plaintiffs' degree of success is "the most critical fac-

tor," we authorized the district court to reduce the requested award to account for the limited success. *Id.* (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933).

■ Our circuit has thus clearly adopted the view, notwithstanding any potential question as to the scope of *Hensley* and *Farrar,* that a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's "partial or limited success" is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory.[3] Thus, to the extent Kassim contends the district court lacked authority to reduce his attorney's fee by reason of his limited success, his appeal fails.

■ We find ourselves unable, however, either to affirm or vacate the district court's fee award, because we cannot tell from the court's explanation whether it was based on permissible or impermissible considerations. As noted, the court's reference to taking account of the "final result" was ambiguous. In addition, we cannot tell from the court's explanation to what extent, if at all, the fee was reduced by reason of the "final result."

While a district court exercises broad discretion in setting the amount of a fee award, it is "important ... for the district court to provide a concise but clear explanation of its reasons," especially with regard to the grant or denial of an adjustment to lodestar based on degree of success. *See Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. We vacate the fee award and remand for clarification (1) whether in fact the fee awarded was reduced below reasonable lodestar by use of the "fi-

nal result," (2) if so, to what extent, and (3) whether the reduction was by reason of the impermissible consideration of disproportionality between the fees claimed and the amount at issue in the suit, in which case the district court should reconsider its ruling, or by reason of the permissible consideration of plaintiff's degree of success. If a further appeal is taken from the district court's new ruling, the appeal will be directed to this panel.

## 3. Other Claims

We have considered plaintiff's other arguments and find them to be without merit.

## CONCLUSION

The judgment awarding plaintiff $2500 in damages is affirmed. The court's award of attorney's fees is vacated and remanded for further explanation and/or reconsideration.

---

**3.** See also *Carroll v. Blinken,* 105 F.3d 79, 82 (2d Cir.1997), a pre-*Quaratino* case in which we approved a substantial reduction in attor-

ney's fees where we found that the plaintiffs achieved "minimal" relief, but "more than strictly nominal relief."