DANCY, et al., Plaintiffs,

v.

McGINLEY, et al., Defendants.

No. 11cv7952 (LMS).

United States District Court,
S.D. New York.

Signed Sept. 21, 2015.

Christopher Dale Watkins, Michael Howard Sussman, Sussman & Watkins, Goshen, NY, Stephen Bergstein, Bergstein & Ullrich, LLP, Chester, NY, for Plaintiffs.

Adrienne Odierna, Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C., Albany, NY, Cynthia S. Rosenzweig, Kyle William Barnett, Van De Water and Van De Water, LLP, Poughkeepsie, NY, Denise M. Cossu, Jaazaniah Asahguii, John Martin Murtagh, Jr., Gaines, Novick, Ponzini, Cossu & Venditti, LLP, White Plains, NY, for Defendants.

### DECISION & ORDER

LISA MARGARET SMITH, United States Magistrate Judge.[1]

Following a judgment entered in his favor on December 15, 2014, Plaintiff Jayvon Elting moved for an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Rule 54(b) of the Federal Rules of Civil Procedure. Pl.'s Mot., Jan. 16, 2015, ECF No. 101. Defendant Officer Gregg McGinley opposed the motion. Defs.' Opp. Br., Aug. 10, 2015, ECF No. 170. For the reasons stated below,

---

1. The parties have consented to my exercise of jurisdiction over this matter pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. *See* Consent to Jurisdiction by a U.S. Magistrate Judge, July 9, 2012, ECF No. 9.

Plaintiffs motion is granted to the extent set forth herein.

## BACKGROUND

Plaintiff Jayvon Elting commenced this action on November 7, 2011, asserting claims for false arrest, excessive force, and malicious prosecution against Defendant Officer Gregg McGinley. Compl. ¶¶ 31–32, Nov. 7, 2011, ECF No. 1.[2] Elting's claims were asserted pursuant to 42 U.S.C. § 1983 in the context of the Fourth Amendment guarantee of freedom from unreasonable seizures.

Thereafter, Officer McGinley answered the Complaint, generally denying all allegations of wrongdoing. Answer, Dec. 28, 2011, ECF No. 5. Elting's claims stemmed from an incident on October 2, 2009, during which Officer McGinley arrested Elting, and thereafter charged Elting with obstructing governmental administration in the second degree (New York Penal Law ("Penal Law") § 195.05), resisting arrest (Penal Law § 205.30), and criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03).

On June 5, 2014, the Court denied Officer McGinley's motion for summary judgment on Elting's claims for false arrest, excessive force, and malicious prosecution. Decision & Order, June 5, 2014, ECF No. 51. A jury trial was scheduled to commence on September 15, 2014. Minute Entry, June 18, 2014. Thereafter, the parties notified the Court that the parties had reached a verbal settlement agreement. Notice of Settlement, Aug. 20, 2014, ECF No. 60. On August 26, 2014, the Court entered an Order of Discontinuance subject to reopening should a settlement not be concluded within forty-five (45) days of the date of the Order. Order, Aug. 26, 2014, ECF No. 61. Elting's counsel notified the Court on September 18, 2014, that a settlement could not be finalized. Pl.'s Letter Mot., Sept. 18, 2014, ECF No. 62. On December 1, 2014, the Court granted Elting's motion to reopen the matter and scheduled a jury trial to commence. Order, Sept. 19, 2014, ECF No. 69; Minute Entry, Oct. 1, 2014. On November 21, 2014, the Court so ordered the parties' stipulation to discontinue Elting's malicious prosecution claim against Officer McGinley. Partial Stipulation & Order, Nov. 21, 2014, ECF No. 87.

The jury trial lasted from December 1, 2014, until December 9, 2014. After the close of evidence on December 4, 2014, the Court as a matter of law granted Elting's Federal Rule of Civil Procedure Rule 50 motion, finding Officer McGinley liable for Elting's false arrest claim, and granted Elting's Rule 50 motion as to the first two elements (color of state law and deprivation of a federal right) of Elting's excessive force claim. On December 9, 2014, the jury reached a verdict in favor of Elting, awarding him $115,000 for compensatory damages on the false arrest claim, and reached a verdict in favor of Elting on the third element (proximate cause) of his excessive force claim, awarding him $100,000 for compensatory damages for his claim of excessive force. Judgment, signed on Dec. 11, 2014, entered on Dec. 15, 2014, ECF No. 92.

---

2. Jarquez Dancy was a co-plaintiff in the action, but the motion addressed herein pertains solely to Elting's request for reasonable attorneys' fees and costs. Jarquez Dancy also asserted claims of false arrest, excessive force, and malicious prosecution, but his claims were asserted only against Defendant Officer John Williams. Jarquez Dancy's malicious prosecution claim was dismissed on summary judgment, his false arrest claim was dismissed by a judgment entered on December 15, 2014, following the conclusion of a jury trial, and his excessive force claim was dismissed by a judgment entered on February 5, 2015, following a second jury trial.

By letter dated January 9, 2015, Elting requested an extension of time to file a motion for an award of reasonable attorneys' fees and costs. Pl.'s Letter, Jan. 9.2015, ECF No. 93. This request was granted. Memo Endorsement, Jan. 12, 2015, ECF No. 98.

On January 12, 2015, Officer McGinley moved for a remittitur of the damages awarded to Elting on his claims of false arrest and excessive force or, in the alternative, a new trial on damages pursuant to Federal Rules of Civil Procedure Rule 59. Mot. to Set Aside Verdict, Jan. 12, 2015, ECF No. 95; Mot. to Set Aside Verdict Corrected, Feb. 11, 2015, ECF No. 134. Officer McGinley also appealed the judgment in favor of Elting to the Second Circuit on January 14, 2015. Notice of Appeal, Jan. 14, 2015, ECF No. 99.

On January 16, 2015, Elting filed his motion for an award of reasonable attorneys' fees and costs. *See* Pl.'s Mot., Jan. 16, 2015; Watkins Affirm., Jan. 16, ECF No. 102; Whateley Affirm., Jan. 16, 2015, ECF No. 103; Pl.'s Mem. L., Jan. 16, 2015, ECF No. 104. On January 30, 2015, Officer McGinley requested an extension of time to respond to Elting's motion. Def.'s Letter Motion, Jan. 30, 2015, ECF No. 121. Officer McGinley's request was granted. Order, Jan. 30, 2015, ECF No. 124. Officer McGinley subsequently requested that his time to respond be held in abeyance pending the Court's determination of his motion for a remittitur or a new trial. Def.'s Letter Motion, March 2, 2015, ECF No. 141. Elting consented to that request. Pl.'s Letter, Mar. 3, 2015, ECF No. 141. On March 5, 2015, the Court

granted Officer McGinley's request. Memo Endorsement, Mar. 5, 2015, ECF No. 144.

By Decision & Order dated May 11, 2015, the Court denied Officer McGinley's motion for a remittitur as to the damages awarded for Elting's false arrest claim, but granted the motion as to the damages awarded for Elting's excessive force claim. Decision & Order, May 11, 2015, ECF No. 153. Elting accepted a reduced damage award of $81,500 for his excessive force claim. Notice of Acceptance of Reduced Damages Award, May 11, 2015, ECF No. 154. On June 9, 2015, Officer McGinley appealed the Court's May 11, 2015, Decision & Order. Notice of Appeal, June 9, 2015, ECF No. 160.

On May 12, 2015, Elting supplemented his motion for an award of reasonable attorneys' fees and costs to account for counsel's time spent on opposing Officer McGinley's motion for a remittitur or a new trial. Bergstein Affirm., May 12, 2015, ECF No. 155; Watkins Supp. Affirm., May 12, 2015, ECF No. 156. On August 10, 2015, Officer McGinley opposed Elting's motion for attorneys' fees and costs. Def.'s Opp. Br., Aug. 10, 2015, ECF No. 170. Elting filed a reply, and sought a further award of reasonable attorneys' fees to account for the time his counsel spent preparing the reply affirmation and memorandum of law. Pl.'s Reply Mem. L., Aug. 20, 2015, ECF No. 171; Watkins Reply Affirm., Aug. 20, 2015, ECF No. 172.

### DISCUSSION

Elting seeks a total of $171,225 in reasonable attorneys' fees [3] and $1,756.78 in

---

3. The original fee application requested a total amount of $153,385 in attorneys' fees. The first supplemental fee application requested $14,440 in attorneys' fees. The second supplemental fee application requested $3,400 in attorneys' fees. The Court notes that Elting's first supplemental fee application made a mathematical error where it stated,

"[T]his Court should award plaintiff Elting $14,440 in reasonable attorneys' fees based on this supplemental application, in addition to the $153,385.00 previously requested, for a total of $167,815.00 in attorneys' fees, to date." Watkins Supp. Affirm. ¶ 14. The sum of $14,440 and $153,385 is $167,825, not $167,815.

costs. As provided in 42 U.S.C. § 1988, "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs[.]" Defendants do not dispute that Elting is a "prevailing patty" in this litigation. However, Defendants challenge the fee application on the grounds that the hourly rates sought and the number of hours expended by counsel are not reasonable.

 "The district court retains discretion to determine ... what constitutes a reasonable fee." *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir.2011) (quoting *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir.1998)) (internal quotation marks omitted). A reasonable fee is calculated by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "Both [the Second Circuit] and the Supreme Court have held that the lodestar— the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea*, 658 F.3d at 166 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir.2008); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010)). "A detailed explanation of the lodestar calculation is unnecessary, but compliance with the Supreme Court's directive that fee award calculations be 'objective and reviewable,' implies the district court should at least provide the number of hours and hourly rate it used to produce the lodestar figure." *Id.* at 166–67 (citing *Perdue*, 130 S.Ct. at 1674). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hour-

ly rates." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933.

## I. Attorneys' Fees

### A. Reasonableness of Hourly Rates

 In determining whether the requested hourly rate is reasonable, a court must analyze whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Thus, "the court uses the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Weather v. City of Mount Vernon*, No. 08 Civ. 192, 2011 WL 2119689, at *2 (S.D.N.Y. May 27, 2011) (internal quotation marks and citations omitted). "Courts should rely on both evidence submitted by the parties as to the rates they typically charge, and [the court's] own knowledge of comparable rates charged by lawyers in the district." *Id.* (internal quotation marks and citations omitted). Moreover, "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment[.]" *LeBlanc–Sternberg*, 143 F.3d at 764 (citing *Missouri v. Jenkins*, 491 U.S. 274, 283–84, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)). In calculating the presumptively reasonable fee, courts should bear in mind that "[t]he reasonable hourly rate is the rate a paying client would be willing to pay," and that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

Here, the fee applicant is Elting, who seeks $171,225 in attorneys' fees. This amount includes compensation for five attorneys: Jennie G. Kim, Mary Jo Whateley, Stephen Bergstein, Christopher D. Watkins, and Michael H. Sussman. Wat-

kins and Sussman are partners at Sussman & Watkins, a civil rights firm. Watkins Affirm. ¶¶ 6, 24. Whateley is an associate at Sussman & Watkins, and Kim is a former associate at the firm. *Id.* ¶¶ 19, 22. Bergstein is a partner at Bergstein & Ullrich, a firm that litigates actions involving civil rights, employment rights, and constitutional rights. Bergstein Affirm. ¶ 4. Overall, the time records submitted by counsel show that Sussman was primarily involved in the earlier stages of the litigation, Kim was mostly involved in discovery, and Watkins primarily worked on opposing Officer McGinley's motion for summary judgment and acted as lead counsel during trial. Watkins Affirm. Exs. 1–2, 4. Whateley assisted Watkins at trial, and Bergstein worked on opposing Officer McGinley's motion for a remittitur or a new trial. Whateley Affirm. Ex. 2; Bergstein Affirm. Ex. 2.

### 1. Jennie G. Kim

Jennie G. Kim graduated from the City University of New York Law School in 2006. Watkins Affirm. Ex. 3. She worked on this instant matter during 2012 and 2013 at Sussman & Watkins, but she is no longer an associate at the firm. Watkins Affirm. ¶ 22. Prior to working at Sussman & Watkins, Kim worked at Legal Services of the Hudson Valley beginning in 2006. Plaintiff seeks compensation for Kim's services at a rate of $250 per hour. *Id.* ¶¶ 22–23. Kim's involvement in the litigation was primarily during discovery. *See* Watkins Affirm. Ex. 2.

Officer McGinley did not oppose Kim's proposed hourly rate. Moreover, Defendant's opposition brief states that the "appropriate range" of fees in this case is $250 to $350 "based upon counsel's experience." Def.'s Opp. Br. at 8. Thus, Kim's proposed hourly rate is at the low end of Defendants' proposed range. Kim's proposed hourly rate of $250 also falls within the low

end of the range approved by courts in this district for attorneys of similar experience in civil rights litigation. *See G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F.Supp.2d 415, 431 (S.D.N.Y.2012) (finding that rates for associates in the civil rights context "have ranged from $250 to $350, with average awards increasing over time") (citing *Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 5724, 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010)); *Vilkhu v. City of New York*, No. 06 Civ. 2095, 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009) (applying Southern District rates and collecting cases). Therefore, the Court finds a rate of $250 per hour for Kim is reasonable.

### 2. Mary Jo Whateley

Mary Jo Whateley graduated from the Pace University School of Law in 1995. Whateley Affirm. ¶ 2. Whateley previously worked as an associate in the Law Offices of Michael H. Sussman for five years between 1996 and 2001. From 2001 to 2012, Whateley worked at Legal Services of the Hudson Valley, representing tenants of federally-subsidized housing and children with disabilities. *Id.* ¶¶ 4–6. In 2012 she joined Sussman & Watkins as an associate attorney. *Id.* ¶¶ 3–4, 7. Whateley has provided training in disability and special education law. *Id.* ¶ 9. She requests an hourly rate of $300 per hour. *Id.* ¶ 11. Her role in this matter consisted of assisting Watkins for trial preparation and assisting Watkins during trial. *Id.* ¶

Defendant did not oppose Whateley's proposed hourly rate. *See* Def.'s Opp. Br. at 8. Moreover, this hourly rate was found to be reasonable for Whateley in *G.B. ex rel. N.B.*, 894 F.Supp.2d 415, a civil rights case brought pursuant to the Individuals with Disabilities Education Act ("IDEA"). The court in *G.B. ex rel. N.B.* noted that the hourly rates awarded in IDEA cases were "low compared to the rates awarded

... in other civil rights cases." *G.B. ex rel. N.B.*, 894 F.Supp.2d at 430. Whateley's requested rate of $300 per hour falls squarely within the range of rates approved by courts in this district for associate attorneys in cases brought under fee-shifting statutes. *See, e.g., Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2015 WL 4006896, at *7 (S.D.N.Y. July 1, 2015) (awarding a fourth-year associate and a fifth-year associate rates of $300 per hour, per person, in a suit brought pursuant to the Federal Labor Standards Act); *Abdell v. City of New York*, No. 05 Civ. 8453, 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015) (awarding $350 per hour for associates in a Section 1983 litigation); *Rosado v. City of New York*, No. 11 Civ. 4285, 2012 WL 955510, at *5 (S.D.N.Y. Mar. 15, 2012) (awarding an associate with nine years of general experience, and three years of experience with civil rights litigation, a rate of $350 per hour).

### 3. Stephen Bergstein

Stephen Bergstein graduated from the City University of New York Law School in 1993, and, from that year through to September, 2001, he worked in the Law Offices of Michael H. Sussman. Bergstein Affirm. ¶ 4. Since 2001 he has been a partner at Bergstein & Ullrich LLP. A major focus of his practice since 1993 has been civil rights litigation. *Id.* Since February, 2012, the New York Law Journal has regularly published Bergstein's commentary on case law in the Second Circuit. Id. He also presents continuing legal education courses. *Id.* Bergstein requests an hourly rate of $400 per hour. *Id.* ¶ 8. His involvement in this instant matter consisted of drafting Elting's opposition to Officer McGinley's motion for a remittitur or a new trial. *Id.* Ex. 2.

Defendant opposes such an hourly rate, on the ground that it is excessive. Defs.' Opp. Br. at 8. Defendant contends that "[t]he market rate for civil rights litigation

services is lower than that for some other areas of practice." *Id.* at 6.

"[I]n the general civil rights context, courts in this district have noted that consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600[.]" *G.B. ex rel. N.B.*, 894 F.Supp.2d at 431 (citing *Mugavero*, 2010 WL 451045, at *5) (additional citations omitted). In cases brought under 42 U.S.C. § 1983, "[r]ates found reasonable by courts in this District for experienced civil rights attorneys appear to cluster in the $350–450 per hour range." *Salama v. City of New York*, No. 13 Civ. 9006, 2015 WL 4111873, at *2 (S.D.N.Y. July 8, 2015) (collecting cases).

Bergstein is an experienced civil rights attorney: he has litigated civil rights actions for more than two decades and is a partner at a civil rights firm. A rate of $400 per hour is reasonable based on Bergstein's experience. *See, e.g., Munoz v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11 Civ. 7037, 2014 WL 4652481, at *4 (S.D.N.Y. Sept. 18, 2014) (finding $400 per hour reasonable for an experienced civil rights litigator with nearly twenty years of experience); *Martinez v. Port Auth. of N.Y. & N.J.*, No. 01 Civ. 721, 2005 WL 2143333, at *26 (S.D.N.Y. Sept. 2, 2005) (awarding rates of $400 and $325 per hour to experienced attorneys with approximately twenty years of experience litigating constitutional claims and police misconduct cases); *New York State Nat'l Org. for Women v. Pataki*, No. 93 Civ. 7146, 2003 WL 2006608, at *2 (S.D.N.Y. Apr. 20, 2003) (awarding a rate of $430 per hour and $400 per hour to experienced civil rights litigators).

### 4. Christopher D. Watkins

Christopher D. Watkins is a 1996 graduate of the University of California, Berkeley, School of Law. He was an associate

editor of the *California Law Review.* Watkins Affirm. ¶ 2. After three years of working as an associate at the firm now known as Pillsbury Winthrop LLP in San Francisco, California, he began working at the Law Offices of Michael H. Sussman in 1999. *Id.* ¶¶ 3–4. He has focused on civil rights and employment litigation since 1999. *Id.* ¶¶ 4–6. Watkins requests an hourly rate of $400 per hour. *Id.* ¶ 10. His involvement in this matter consisted primarily of opposing Defendants Officer McGinley and Officer Williams' motion for summary judgment, litigating the trial, and handling post-trial motions. Watkins Affirm. Ex. 1.

Watkins' requested rate is reasonable. Watkins has worked on civil rights litigation for approximately sixteen years, and he is a partner at a law firm that litigates in civil rights actions. *See id.* ¶¶ 3–6. Watkins was also lead counsel during most of the duration of this case. *Id.* ¶ 12. Moreover, Watkins was awarded an hourly rate of $375 in 2012 in the matter of *Thankachan v. Peekskill Housing Auth.,* 07 Civ. 8332(PED), a civil rights action brought pursuant to 42 U.S.C. §§ 1981, 1983. *Id.* ¶ 10. Based on Watkins' background as an experienced civil rights litigator and partner of a civil rights law firm, the Court concludes that an hourly rate of $400 is reasonable. *See Salama,* 2015 WL 4111873, at *2; *see, e.g., Munoz,* 2014 WL 4652481, at *4; *Martinez,* 2005 WL 2143333, at *26; *New York State Nat'l Org. for Women,* 2003 WL 2006608, at *2.

### 5. Michael H. Sussman

Michael H. Sussman is a graduate of Harvard Law School, and has thirty-six years of experience as a civil rights lawyer. Watkins Affirm. ¶ 24. He requests an hourly rate of $475 per hour. *Id.* Sussman was awarded a rate of $450 per hour in 2012 in the matter of *G.B. ex rel. N.B.,* 894 F.Supp.2d 415. Watkins Affirm. ¶¶ 24. In this case, Sussman was primarily involved

in preliminary client meetings and drafting the Complaint. Watkins Affirm. Ex. 4.

Defendant argues that Sussman's requested rate is unreasonable in part because, "[t]here was no element of this case that made it either unusually difficult or complex." Def.'s. Opp. Br. at 7. Elting initially had three relatively straightforward claims of false arrest, excessive force, and malicious prosecution. Only two of the claims went to trial. While it seems clear that, for experienced attorneys, hourly rates of $300–400 are unremarkable in civil rights cases in the Southern District, some courts find that "awards [exceeding $400 per hour] are only warranted in 'unusually difficult and complex' cases." *E.S. & M.S. v. Katonah Lewisboro Sch. Dist.,* 796 F.Supp.2d 421, 430 (S.D.N.Y.2011) (quoting *Heng Chan v. Sung Yue Tung Corp.,* No. 03 Civ. 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007)). This instant matter does not qualify as "unusually difficult or complex." Elting alleged Section 1983 claims of false arrest, excessive force, and malicious prosecution, against Officer McGinley. Elting's co-plaintiff, Jarquez Dancy, alleged Section 1983 claims of false arrest, excessive force, and malicious prosecution against Defendant Officer John Williams. The claims were not factually complicated. Furthermore, Sussman was involved only briefly during the beginning stages of this case. See Watkins Affirm. Ex. 4. The Complaint, which was drafted by Sussman, was seven pages in length, and it did not reflect the work of an experienced attorney, as evidenced by the parties' confusion about whether the Complaint included a claim by Dancy for false arrest. *See* Defs.' Letter, Nov. 17, 2014, ECF. No. 86; Order, Nov. 26, 2014, ECF No. 90. It is therefore reasonable to award Sussman an hourly rate of $450 per hour, which is what he received in 2012 and which accounts for

the relatively uncomplicated nature of.this matter.

### B. Reasonableness of Hours Expended

In determining the number of hours reasonably expended by Elting's counsel in this case, the Court must consider both "contemporaneous time records ... [that] specify, for each attorney, the date, hours expended, and nature of the work done," *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983), as well as "its own familiarity with the case and its experience generally as well as ... the evidentiary submissions and arguments of the parties." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir.1992) (internal quotation marks and citation omitted). It is within the court's discretion to "trim fat"—that is, to reduce the total number of hours claimed to have been spent. *Soler v. G & U, Inc.*, 801 F.Supp. 1056, 1060 (S.D.N.Y. 1992) (citations omitted). Courts may reduce the fee award requested in some circumstances, such as when plaintiffs submit deficient or incomplete billing records, *see Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933, or in order to exclude "excessive, redundant, or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999).

### 1. Reductions Based on Partial Success

Defendant contend that "it is unconscionable for counsel's fees to nearly equal the recovery actually awarded to the client." Def.'s Opp. Br. at 8. Defendant argues that this Circuit "recognizes that the degree of success obtained by the plaintiff is the most important factor in determining the appropriate fee award." *Id.* Defendant also argues that Elting only succeeded on two claims out of a total of six claims which were litigated in this mat-ter, and therefore should have his attorneys fees reduced accordingly. *Id.* at 1.

Elting contends that the six claims were inextricably intertwined, and the Court should therefore not reduce the award of attorneys' fees to Elting based on the unsuccessful claims. Pl.'s Mem. L. at 3–6. Elting further argues that his attorneys should recover a fully compensatory fee because he obtained "excellent results." Pl.'s Reply Br. at 1 (citing *G.B. ex rel. N.B.*, 894 F.Supp.2d at 425). Elting contends that the proper inquiry is "not whether plaintiff has succeeded on every motion or every claim, but whether such action by the attorney was reasonably undertaken." *Id.* (citing *Gierlinger v. Gleason*, 160 F.3d 858, 880 (2d Cir.1998); *Marisol A. ex rel. Forbes v. Giuliani*, 111 F Supp.2d 381, 393 (S.D.N.Y.2000)).

The Second Circuit has "clearly adopted the view ... that a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiffs 'partial or limited success' is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory." *Kassim v. City of Schenectady*, 415 F.3d 246, 256 (2d Cir. 2005). Where a plaintiffs lawsuit was based on a common nucleus of facts, the Second Circuit has "affirmed district court reductions of a lodestar fee by reason of the plaintiffs limited degree of success." *Id.* at 255 (discussing *Green v. Torres*, 361 F.3d 96 (2d Cir.2004); *Abrahamson v. Bd. of Educ.*, 374 F.3d 66 (2d Cir.2004)). "The district court may attempt to identify specific hours.that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933.

In *Green v. Torres*, a plaintiff sued the City of New York and five police officers, alleging claims of false arrest and mali-

cious prosecution. The plaintiff voluntarily dropped certain claims prior to trial, and subsequently received a judgment in his favor for $50,000 and punitive damages in the amount of $8508. 361 F.3d at 98. The Second Circuit affirmed the district court's decision to reduce the lodestar by twenty percent because the "plaintiff had pursued inflated claims ... to the eve of trial[,]" and "the only claims that were ever likely to prevail were those against [one detective] for false arrest and abuse of process." *Id.* at 98. The Second Circuit emphasized that "the degree of success obtained by the plaintiff is the most important factor in determining the appropriate fee award." *Id.* at 99.

As explained above, the instant matter began with two plaintiffs, Elting and Dancy, who each asserted claims of false arrest, excessive force, and malicious prosecution. Elting received a substantial award of damages in the amount of $215,000 for his false arrest and excessive force claims. Judgment, Dec. 11, 2014. The Court subsequently remitted $18,500 of Plaintiff's damages award. Decision & Order, May 11, 2015. Elting had pursued his malicious prosecution claim until the end of discovery, and he agreed to dismiss that claim prior to trial. Stipulation & Order, Nov. 21, 2014. Dancy was unsuccessful on all three of his claims. By Decision & Order dated June 5, 2014, this Court dismissed Dancy's malicious prosecution claim on summary judgment. Decision & Order, June 5, 2014. Dancy's false arrest claim was dismissed following a jury trial finding in favor of Officer Williams on that claim, and his excessive force claim was dismissed after a subsequent jury trial finding in favor of Officer Williams on the excessive force claim. *See* Judgment, December 11, 2014; Judgment, February 5, 2015.

As in *Green v. Torres,* Elting and Dancy's claims can be characterized as arising from a common nucleus of facts. Dancy and Elting were arrested on the night of October 2, 2009, after Officer McGinley stopped the two men while they were walking together on Cannon Street in Poughkeepsie. Officer Williams claimed that he identified Dancy as a person who fit the description of an alleged perpetrator of a robbery, which provided probable cause for Dancy's arrest. Defs.' Mem. L. Supp. Mot. Summary Judgment at 8–9, Jan. 2, 2014, ECF No. 26. Officer McGinley and Officer Williams argued in their motion for summary judgment that Officer McGinley had probable cause to arrest Elting based on Elting's accompanying Dancy, whom the officers suspected of having committed a crime. *See id.* at 6–9. Officer Williams claimed that he used force on Dancy after observing Elting attempting to flee from Officer McGinley. *See* Defs.' Rule 56.1 Statement ¶ 39, Jan. 2, 2014, ECF No. 27. Although only Elting succeeded on claims for false arrest and excessive force, most of Plaintiffs' counsel's time expended on discovery, opposition to Defendants' motion for summary judgment, and trial were necessary for both Elting's claims and Dancy's claims. In other words, the amount of time expended on both sets of claims cannot be severed to account for just Elting's claims. Therefore, the Court does not find that Plaintiff's claim for attorneys' fees should be reduced where counsel spent time on matters relating to both Dancy's claims and Elting's claims.

■ Nonetheless, in light of Elting's partial success, the Court finds that it is reasonable to make certain reductions in Elting's attorneys' fees where counsel's work pertained solely to Dancy's claims or to Elting's malicious prosecution claim. Based on a review of Elting's counsel's time records, the trial transcript, and Plaintiffs written submissions, it is appar-

ent that Elting has claimed attorneys' fees for counsel's time expended on, for example, questioning witnesses during trial about Dancy's physical and emotional injuries, reviewing Dancy's medical records, and conferencing about pursuing a re-trial of Dancy's excessive force claim, all of which were irrelevant to Elting's claims. Certain hours were also billed for researching Elting's malicious prosecution claim, a claim on which Elting did not prevail. The Court finds that it is reasonable to reduce the attorneys' fees claimed where the time billed cannot reasonably be attributed to litigating Elting's successful claims. Such reductions are set forth in further detail *infra*.

The Court does not find that counsel's fees should be reduced based on Defendant's contention that the fees claimed "nearly equal the recovery" awarded to Elting. Def.'s Opp. Br. at 8. Elting was ultimately awarded $190,500 (accounting for the $18,500 remittitur) in compensatory damages, and he seeks a total amount of $171,225 in attorneys' fees. Courts in this circuit have awarded attorneys' fees greater than the amount of damages that plaintiffs have recovered in the same action. *See, e.g., Millea*, 658 F.3d at 169 (finding that the district court erred in reducing the $144,792 lodestar figure in a Family Medical Leave Act case based on the outcome of the litigation, which resulted in an award of $612.50 to plaintiff); *Douyon v. NY Medical Health Care, P.C.*, 49 F.Supp.3d 328, 352 (E.D.N.Y.2014) (awarding $102,237.97 in attorneys' fees and $350 in costs where plaintiff recovered $1,050). Thus, plaintiff's attorneys' fees will not be reduced on this basis. *See City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) ("We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.") *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d

Cir.2005) ("Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.").

The Court also does not find that Plaintiffs counsel is entitled to full compensation for the litigation of this matter based on Plaintiff's argument that he obtained "excellent results." Pl.'s Reply Br. at 1. In *G.B. ex rel. N.B.*, defendants sought a reduction in plaintiffs' attorneys' fees on the ground that the plaintiffs achieved only partial success. 894 F.Supp.2d at 426. The court first explained that defendants failed to understand that the court's equitable reduction of plaintiff's recovery did not reflect on the merits of the plaintiff's claims. *Id.* The court then declined to reduce the plaintiffs' attorneys fees because the plaintiffs had "obtained excellent results, as they prevailed on the merits of each claim they brought before the Court and were awarded tuition reimbursement for fourteen of the seventeen months for which they sought reimbursement." *Id.* (citing *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933) (internal quotation marks omitted). In the instant matter, Plaintiff Elting may have achieved excellent results on his false arrest and excessive force claims, but he cannot be considered to have achieved excellent results in the context of this entire litigation, which included one claim on which Elting did not prevail, and three claims on which his co-plaintiff, Dancy, did not prevail.

The Court is also not convinced by Plaintiffs argument that Plaintiffs' counsel should be fully compensated for this litiga-

tion because the proper inquiry is "not whether plaintiff has succeeded on every motion or every claim, but whether such action by the attorney was reasonably undertaken." Pl.'s Reply Br. at 1. The cases that Plaintiff cited, *Gierlinger* and *Marisol*, are distinguishable from this instant matter. In *Marisol*, the Court declined to reduce plaintiffs' attorneys' fees to account for plaintiffs' unsuccessful motion to dismiss the defendants' interlocutory appeal of the district court's decision to grant class certification. *Marisol A. ex rel. Forbes v. Giuliani*, 111 F.Supp.2d 381, 393 (S.D.N.Y.2000). The court in *Marisol* found that plaintiffs' counsels' efforts, although unsuccessful, were reasonable especially in light of the fact that neither the Second Circuit nor the Supreme Court had squarely addressed the issue raised by the plaintiffs in their motion. *Id.* The issue in *Marisol* was whether plaintiffs' counsel should be compensated for an unsuccessful, but reasonably made motion. Here, the Court is not reducing Elting's fees based on an unsuccessful, but reasonable motion that Elting made. Instead, the Court will reduce the fees to account for Elting's partial success, which is a valid consideration in determining an award of reasonable fees. *See Kassim*, 415 F.3d at 256. In *Gierlinger*, the Second Circuit found that it was an abuse of discretion for the district court to deny an award of attorneys' fees with respect to services performed in connection with plaintiff's prior appeal, which was granted in part and denied in part, because "an award of fees under § 1988 does not depend on her success at interim stages of the litigation, but rather depends on the ultimate outcome of the litigation." *Gierlinger v. Gleason*, 160 F.3d 858, 880 (2d Cir.1998). In this instant matter, the Court is not reducing Elting's award of attorneys' fees based on an unsuccessful motion. The reductions made herein are based on Elting's partial success ultimately achieved in the litigation.

### 2. Initial Fee Application

#### i. Kim

Kim billed a total of 57.75 regular hours, and an additional 10.5 travel hours. Watkins Affirm. Ex. 2.[4] Kim's time was spent primarily on undertaking discovery, which is compensable legal work. However, the Court finds that it is appropriate to deduct 1.5 hours from the 3 hours that Kim spent on November 5, 2012, drafting and discussing an Amended Complaint to add new defendants, because no amended complaint was subsequently filed. *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. The Court therefore concludes that Kim expended 56.25 reasonable hours, and an additional 10.5 travel hours, in this litigation. Her total amount of reasonable fees is thus $15,375.

#### ii. Whateley

Whateley billed 52 hours, and an additional 8 hours of travel time. Whateley Affirm. Ex. 2. Whateley's hours, which were primarily spent on preparing for the trial and attending the trial, are in most respects reasonable. However, deductions will be made for time spent only on Dancy's claims that were separate from Elting's claims. Based on a review of the trial transcript and records, the Court finds that at least two hours of testimony at trial did not concern Elting, For example, testimony from Dancy's mother about Dancy's injuries, testimony from Dancy specifically about his own injuries, and testimony about what happened to Dancy after he was arrested and transported to the police department are not relevant to Elt-

4. In the Southern District, travel hours are customarily compensated at one-half (.5) of the usual hourly rate. *See, e.g. Sylvester v.* *City of New York*, No. 03 Civ. 8760, 2006 WL 3230152, at *10 (S.D.N.Y. Nov. 8, 2006).

ing's claims. Accordingly, the Court deducts 2 hours from Whateley's total number of hours claimed.

Thus, this Court concludes that Whateley expended 50 reasonable hours, and an additional 8 travel hours. Her total amount of reasonable fees is therefore $16,200.

### iii. Sussman

Sussman billed 14.6 hours. Watkins Affirm, Ex. 4. The Court finds that certain deductions from this total are warranted. The entry dated June 16, 2012, stating, "Meet with Ms. Kim re: matter," is vague. *Id.* Therefore, the 1.5 hours billed for this entry will be deducted. An entry dated May 29, 2013, stated, "Draft letter to court." *Id.* This entry is also vague, and there was no letter to the Court filed on or shortly after that date. Therefore, the 1.25 hours billed for this entry will be deducted. Finally, the November 1, 2011, entry for "Review of medical records and police reports" did not separate time spent reviewing Dancy's medical records as opposed to time spent reviewing Elting's medical records. *Id.* Therefore, one-half hour of time will be deducted from the 1.25 hours billed for this entry. Based on these deductions, the Court concludes that the total number of reasonable hours that Sussman expended was 11.35 hours. Sussman did not bill any travel hours. His total amount of reasonable fees is therefore $5,107.50.

### iv. Watkins

In the initial fee application, Watkins billed 272.25 regular work hours, and 25 travel hours. Watkins Affirm. Ex. 1. With regard to travel time, Watkins requests compensation at his full rate for days on which he drove Plaintiffs to the Court during trial and discussed the case with Plaintiffs during the drive. Watkins Affirm. ¶ 16. Defendant argues that the customary 50% rate for travel time should apply. Def.'s Opp. Br. at 4. Plaintiff argues in his reply memorandum of law that

counsel "only requested 9 travel hours at his full rate." Pl.'s Reply Mem. L. at 4. However, the Court identified 12 travel hours billed at 100% in Watkins' time records. In an entry dated November 5, 2013, Watkins billed at 100% of his rate for 3 hours of travel to the Court to attend a settlement conference. The entries dated December 1, 2014, December 2, 2014, and December 3, 2014, which were trial days, included 9 hours of travel time billed at 100% of Watkins' rate. Plaintiff argues that this time was spent productively and should therefore be compensated in full. Pl.'s Reply Mem. L. at 4. However, it is unlikely that counsel can (or should) be operating at 100% productivity discussing matters with his client while operating a motor vehicle. The Court finds that it is reasonable to apply the customary 50% rate for counsel's travel time.

A few additional deductions are warranted. For example, Watkins does not provide the date on which he spent 1.5 hours conferring with Kim and reviewing the Amended Complaint she drafted. Watkins Affirm. Ex. 1. Because this entry is deficient the Court will deduct the 1.5 hours. In addition, time spent exclusively on Dancy's claims will be deducted: On January 28, 2014, Watkins researched Jarquez Dancy's false arrest claim for three hours. *Id.* An entry dated November 6, 2014, stated, "review pltfs' med records," and was billed for one hour. *Id.* The Court will deduct one-half hour to account for time that counsel reasonably would have spent reviewing Dancy's medical records as opposed to those of Elting. On November 13, 2014, Watkins spent one hour reviewing an audiotape regarding Dancy. *Id.* On November 18, 2014, Watkins spent one hour researching Dancy's false arrest claim. *Id.* On November 25, 2014, Watkins also spent one hour researching Dancy's false arrest claim. *Id.* On December 10, 2014, Watkins spent one hour conferring with Sussman regarding retrial—an

issue which applied only to Dancy. *Id.* On December 12, 2014, Watkins spent .25 hours on a telephone conference with the Court, which was solely to address the issue of Dancy's retrial. *Id.* The Court assumes that the entry on that same date stating "t/cs w/ pltfs re same" for .25 hours was also with regard to Dancy's retrial. *Id.* As explained above, at least two hours of trial time involved testimony that was unrelated to Elting's claims; therefore, the Court will deduct two hours from Watkins' time billed for attending trial.

The Court also finds it appropriate to deduct .25 hours on November 10, 2014, which Watkins spent on reviewing Defendants' letter regarding Elting's malicious prosecution claim, *id.*, a claim on which Elting did not succeed. Watkin's one-half hour spent on November 12, 2014, researching punitive jury instructions, *id.*, will also be deducted as Elting did not succeed in obtaining punitive damages against McGinley. Finally, Watkins miscalculated his entry dated December 4, 2014. The entry states that he expended 3 hours on travel, 7 hours on trial attendance, and 2 hours on preparing for the next trial day, which should have totaled 3 hours of travel time and 9 hours of regular work time. *Id.* He billed 3 hours of travel time and 10 hours of regular work time. *Id.* The Court will therefore deduct one hour of regular work time from this entry.

Defendant contends that the 64.75 hours that Watkins spent working on opposing Officer McGinley and Officer Williams' summary judgment motion should be reduced by "at least half." Def.'s Opp. Br. at 4. However, as discussed *supra*, the Court finds that Dancy and Elting's claims were in large part intertwined, and therefore declines to reduce Watkins' hours opposing Defendants' summary judgment by half. *Id.*

Defendant also argues that Watkins' time spent on opposing the motion for summary judgment should be reduced to account for the fact that Dancy's malicious prosecution claim, as well as Elting's malicious prosecution claim, were unsuccessful. The Court agrees that it would be unreasonable to order Defendants to pay for Plaintiffs' counsel's time spent on unsuccessful claims. However, Plaintiffs' memorandum of law in opposition to Defendants' motion for summary judgment did not brief the issue of Dancy's malicious prosecution claim. Plaintiffs devoted approximately 1.5 pages out of the twenty-two pages of that memorandum of law arguing against dismissal of Elting's malicious prosecution claim. Therefore, the Court will reduce the 64.75 hours that Watkins spent opposing the motion for summary judgment by 5 hours to account for the fact that Elting ultimately did not prevail on his malicious prosecution claim.

Finally, this Court disagrees with Defendants' argument that it would be unreasonable to order Defendants to pay for the entirety of the twenty-five hours that Watkins billed for his time spent during the jury's deliberations. *See* Defs.' Opp. Br. at 5. Although one could speculate on what portions of the jury's deliberations were limited to Dancy's claims, it would be improper for the Court to do so. The jury's deliberations are protected as a matter of law, and must remain so. *See e.g.*, Fed. R.Evid. 606(b) (prohibiting the admissibility of "any statement made or incident that occurred during the jury's deliberations" during an inquiry into the validity of a verdict).

Based on the foregoing, the Court concludes that Watkins expended 242 reasonable hours, and an additional 37 travel hours.[5] His total amount of reasonable fees is therefore $104,200.

---

**5.** The travel hours increased from 25 to 37, because the 12 travel hours that Watkins

### 3. Supplemental Fee Application

Watkins billed 12.5 hours for opposing Defendants' motion for a remittitur or new trial. Watkins Supp. Affirm. Ex. 1. Bergstein billed 23.6 hours. Bergstein Affirm. Ex. 2. Defendants do not contest the number of hours that Watkins and Bergstein billed. Defendants argue, however, that the fees claims are unreasonable on the grounds that the rates are unreasonably high and the result of the motion practice resulted in a reduction in the judgment. Pls.' Opp. Br., 8.

As discussed *supra*, the rates claimed by Watkins and Bergstein are reasonable and fall within the range of rates approved by courts in this district. However, Watkins' time records include entries billing for time spent on "coordinat[ing] filing" on January 16, 2015, February 11, 2015, and May 12, 2015, Watkins. Supp. Affirm. Ex. 1. These entries are vague, and, in any event, "coordinating filing" appears to be a clerical task. Plaintiff's fee request will therefore be reduced because clerical tasks are can be performed by a non-attorney staff. *See, e.g., E.S. v. Katonah–Lewisboro Sch. Dist.,* 796 F.Supp.2d 421, 431 (S.D.N.Y.2011) (reducing plaintiff's attorneys' fees where the attorneys billed for administrative and clerical tasks including preparing documents for filing), *aff'd, E.S. ex rel. B.S. v. Katonah–Lewisboro Sch. Dist.,* 487 Fed.Appx. 619 (2d Cir.2012). Because counsel billed a total of approximately 1.5 hours for coordinating filing,[6] *see* Watkins Supp. Affirm. Ex. 1, the Court will deduct 1.5 hours from Watkins' total number of hours claimed in the supplemental fee application. Watkins will

therefore be compensated for a total of 11 hours. His total amount of reasonable fees for his supplemental fee application is therefore $4,400.

Bergstein's time records are detailed, and his time was spent on compensable legal research and writing. *See* Bergstein Affirm. Ex. 2. He will therefore be compensated for the requested 23.6 hours. His total amount of reasonable fees is thus $9,440.

With regard to Defendants' argument that the fees should be reduced because the motion for a remittitur or a new trial resulted in a reduction in the judgment, *see* Defs.' Opp. Br., 8, the Court does not find that the reduction in Plaintiff's recovery should result in a reduction in attorney fees. *See, e.g., G.B. ex rel. N.B.,* 894 F.Supp.2d at 426 (declining to reduce the award of attorneys' fees where plaintiffs succeeded on the merits of their claims but the court had reduced the amount of plaintiff's recovery). Biting is a prevailing party who received actual relief on the merits of his claim, and he should therefore be compensated for reasonable efforts made by counsel to defend his damages award. *Cf. Gierlinger,* 160 F.3d at 880 ("A plaintiff is a prevailing party in the litigation within the meaning of § 1988 if she has 'received actual relief on the merits of h[er] claim,' and she should not necessarily be denied fees for hours expended on interim stages of the case in which a ruling was made in favor of the party against whom she ultimately prevailed." (quoting *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992))).

---

billed at 100% of his rate was removed from his regular work hours and added to his travel hours.

**6.** Watkins billed one-half hour on January 16, 2015, for coordinating filing, one-half hour on February 11, 2015, for coordinating filing, and one hour on May 12, 2015, on preparing

a supplemental fee affirmation and coordinating filing. Watkins Suppl. Affirm. Ex. 1. Half the time in the May 12, 2015, entry may be attributable to the clerical task of coordinating filing while the other half may be attributable to the compensable legal task of preparing the supplemental fee affirmation.

### 4. Second Supplemental Fee Application

Watkins billed 8.5 hours for preparing Elting's reply brief in support of the motion for reasonable attorneys' fees and costs. Watkins Reply Affirm. Ex. 1. Watkins' hourly rate is reasonable, and the time expended was on compensable legal work. Accordingly, Watkins will be compensated for the 8.5 hours billed. His total amount of reasonable fees for his supplemental fee application is thus $3,400.

## II. Costs

 Sussman & Watkins incurred $1,756.78 in costs, including a $350 filing fee, $120 in service fees, $27.02 for a copy of Elting's medical records, $1,020 for deposition transcripts, and $239.76 for a transcript of a case captioned *Nesheiwat v. City of Poughkeepsie*. Watkins Affirm. Ex 5. Although it is unclear what the relevance of the case *Nesheiwat v. City of Poughkeepsie* was to this instant matter, Defendant effectively concedes the case's relevance to this litigation by not opposing this cost claimed by Plaintiff. The rest of the costs for which Elting seeks compensation appear reasonable and necessary for this litigation. Thus Elting will be awarded $1,756.78 in costs.

### *CONCLUSION*

For the reasons stated above, Elting's motion for reasonable attorneys' fees and costs is granted to the extent set forth herein. Elting is entitled to reasonable attorneys' fees in the amount of $158,122.50 and to costs in the amount of $1,756,78.

This constitutes the Decision and Order of the Court.

**SO ORDERED.**